COMMONWEALTH *vs.* HUGH HARKINS.

Essex.   November 8, 1878; November 25, 1879. — January 20, 1880.

A person, who by false and fraudulent representations obtains the consent of a city to the entry of a judgment in his favor against it in an action then pend-ing, and the payment of a sum of money by the city in satisfaction of that judgment, cannot be convicted of obtaining money by false pretences, under the Gen. Sts. *c.* 161, § 54.  GRAY, C. J., AMES & SOULE, JJ., dissenting.

INDICTMENT on the Gen. Sts. *c.* 161, § 54, charging that the defendant, on June 9, 1877, at Lynn, " being a person of evil disposition, and devising and intending by unlawful ways and means to obtain and get into his possession the moneys of the city of Lynn, a municipal corporation, within said county of Essex, duly and legally established by the laws of said Commonwealth, and with intent to cheat and defraud, did then and there unlaw-fully, knowingly and designedly, falsely pretend and represent, to said city, through its agent, servant and city solicitor, Rollin E. Harmon, that said city, on the third day of September in the year of our Lord one thousand eight hundred and seventy-six, negligently suffered Union Street, a public highway and street in said Lynn, which said city was bound to keep in repair and safe for travel, to be out of repair and dangerous, that he the said

Harkins, while travelling on said Union Street and using due care, on said third day of said September, was hurt and injured by reason of the dangerous condition of said street and highway, that before said hurt and injury he the said Harkins was well and strong, was able to labor daily, and that by reason of said hurt and injury he was disabled for many days thereafter from performing any labor whatever, and that by reason of said hurt and injury, so received as aforesaid, he had suffered great pain and inconvenience until said ninth day of said June; and he the said Harkins then and there exhibited to said Harmon, servant, agent and solicitor, as aforesaid, his the said Harkins's foot and ankle in a maimed and injured condition, and then and there falsely and fraudulently pretended and represented to said Harmon, servant, agent and solicitor as aforesaid, that said maimed and injured condition of his foot was caused by said hurt and injury received by him on said Union Street. And the said city of Lynn, then and there believing the said false pretences and representations, and being deceived thereby, and said Harmon, agent, servant and solicitor, as aforesaid, believing said false pretences and representations, so made as aforesaid, by said Harkins, and being deceived thereby, the said city of Lynn, and said Harmon, agent, servant and solicitor as aforesaid, were induced and did then and there consent and agree to the entry of a certain judgment, against said city, for the sum of, and of the value of, five hundred and eighty-seven dollars and fifty cents, which said judgment was then and there entered in pursuance of said agreement, in a certain suit, then pending in the Superior Court, civil session, for said county of Essex, in which suit said Harkins, under the name of Frank Hawkins, was plaintiff and said city was defendant; and said city of Lynn, and said Harmon, agent, servant and solicitor, as aforesaid, then and there believing said false and fraudulent representations and pretences, so made as aforesaid by said Harkins, and being deceived thereby, said city then and there paid to said Harkins the amount of said judgment, to wit, the sum of five hundred and eighty-seven dollars and fifty cents, of the property and money of said city. And the said Harkins did then and there obtain said judgment against said city of Lynn, and did then and there receive said sum of five hundred and eighty-seven dollars and fifty cents, by means of

the false pretences and representations aforesaid, and with the intent to cheat and defraud said city of Lynn of the amount of said judgment, to wit, of said sum of five hundred and eighty-seven dollars and fifty cents. Whereas, in truth and in fact, said Harkins was not then and there hurt and injured by reason of any defect or want of repair in said Union Street, and said Harkins was not well and strong and able to labor daily before said third day of said September and before said alleged hurt and injury, and said Harkins was not disabled by reason of said alleged hurt and injury for many days thereafter from performing any labor whatever; and whereas in truth and in fact said Harkins was not then and there injured by reason of said alleged hurt on said Union Street, and he did not suffer great pain and inconvenience until said ninth day of said June; and whereas in truth and in fact said injured and maimed condition of said foot and ankle, so exhibited to said Harmon as aforesaid, was not caused by said hurt and injury on said Union Street, and in truth and in fact said Harkins was not injured or hurt on said Union Street, or in said Lynn at all; all of which the said Harkins then and there well knew; against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment, on the ground that it set forth no offence known to the law. *Bacon,* J. overruled the motion. The defendant was then tried, and found guilty; and alleged exceptions.

The case was argued at the bar in November 1878, by *F. W. Griffin,* for the defendant, and *C. R. Train,* Attorney General, for the Commonwealth; and submitted on briefs to all the judges in November 1879, by *Griffin,* for the defendant, and *G. Marston,* Attorney General, for the Commonwealth.

COLT, J. The defendant was indicted for obtaining money from the city of Lynn by false pretences. He moved to quash the indictment on the ground that it did not set forth an offence known to the law.

It is alleged in substance that the defendant falsely represented to the city of Lynn, through its agent, the city solicitor, that a street which the city was bound to repair had been suffered to be

out of repair, and that the defendant, while travelling thereon with due care, was injured by the defect; that the defendant at the same time exhibited an injury to his foot and ankle, and represented that it was caused by the alleged defect. It is further alleged that the city and its solicitor were deceived by these representations, and, being induced thereby, agreed to the entry of a judgment against the city in a suit then pending in favor of the defendant in this case; and upon the entry thereof paid the amount of the same to him. It is not alleged that the suit was to recover damages on account of the defendant's injury from the alleged defect; but we assume that this was so, for otherwise there could be no possible connection, immediate or remote, between the pretences charged and the payment of the money in satisfaction of the judgment recovered.

In the opinion of a majority of the court, this indictment is defective. The facts stated do not constitute the offence of obtaining money by false pretences. The allegations are, that an agreement that judgment should be rendered was obtained by the pretences used, and that the money was paid by the city in satisfaction of that judgment. It is not alleged that, after the judgment was rendered, any false pretences were used to obtain the money due upon it; and, even with proper allegations to that effect, it has been held that no indictment lies against one for obtaining by such means that which is justly due him. There is no legal injury to the party who so pays what in law he is bound to pay. *Commonwealth* v. *McDuffy*, 126 Mass. 467. *People* v. *Thomas*, 3 Hill, 169. *Rex* v. *Williams*, 7 Car. & P. 354. A judgment rendered by a court of competent jurisdiction is conclusive evidence between the parties to it that the amount of it is justly due to the judgment creditor. Until the judgment obtained by the defendant was reversed, the city was legally bound to pay it, notwithstanding it may have then had knowledge of the original fraud by which it was obtained; and with or without such knowledge it cannot be said that the money paid upon it was in a legal sense obtained by false pretences, which were used only to procure the consent of the city that the judgment should be rendered.

The indictment alleges the fact of a judgment in favor of the defendant, which, if not conclusive as between the parties to this

criminal prosecution, is at all events conclusive between the parties to the transaction.   To hold that the statute which punishes criminally the. obtaining of property by false pretences, extends to the case of a payment made by a judgment debtor in satisfaction of a judgment, when the evidence only shows that the false pretences were used to obtain a judgment, as one step towards obtaining the money, would practically make all civil actions for the recovery of damages liable in such cases to revision in the criminal courts, and subject the judgment creditor to prosecution criminally for collecting a valid judgment, whether the same was paid in money or satisfied by a levy on property.

SOULE, J.   I am obliged to differ from the majority of the court, and am authorized to state that· the Chief Justice and Mr. Justice Ames concur with me.   As the case involves questions of importance in the administration of public justice, it has seemed to us proper to state our views of them.   In doing this, it is necessary to discuss several points which are raised by the exceptions, but are not treated of in the opinion of the court, because they have become immaterial to the decision which has been reached by the majority.

The indictment sets forth that the defendant, with intent to cheat and defraud, made certain false representations and pretences, as to matters within his knowledge and relating to existing facts as well as to past transactions, concerning which neither the city of Lynn nor its agent had the means of knowing the truth, and that, by means of these representations and pretences, the city, believing them to be true, was induced to and did part with its money to the defendant.   It further sets forth that the defendant received the money by means of the false pretences, and with intent to cheat and defraud the city of Lynn, and that the several representations and pretences were not true. It therefore charges an offence.   *Commonwealth* v. *Hooper,* 104 Mass. 549.   *Commonwealth* v. *Parmenter,* 121 Mass. 354.

The additional allegations as to the consent to the entry of judgment and the satisfaction of the judgment are merely a narration of the methods by which the parties proceeded in paying and receiving the money, and are wholly unnecessary,

but they do not charge another offence, nor make the indict-
ment bad for duplicity. The obtaining of the money by false
pretences is the gist of the offence, not the obtaining of the
judgment.

The fact that the judgment obtained by the defendant re-
mains unreversed constitutes no objection to the indictment. It
is true that, as a matter of public policy, an unreversed judg-
ment is conclusive between the parties and their privies, in ac-
cordance with the maxim, *Interest reipublicæ ut sit finis litium.*
And this principle goes so far that one cannot sustain an ac-
tion against another for obtaining a judgment against him by
means of conspiracy and fraud, if he had an opportunity to
be heard at the trial of the cause in which the judgment was
obtained. *Castrique* v. *Behrens*, 3 E. & E. 709. *Huffer* v. *Allen*,
L. R. 2 Ex. 15.

But it is equally true that a judgment is conclusive only be-
tween the parties and their privies, and that strangers are not
bound nor affected by it. To the indictment the Commonwealth
is a party, but was a stranger to the action between the city of
Lynn and the defendant, in which the judgment was recovered.
That judgment is, therefore, no evidence against the Common-
wealth that the defendant was entitled to recover anything of
the city. It has no bearing on the case at bar, except as being
a part of the machinery employed in obtaining the money wrong-
fully. Its existence is no bar to prevent the Commonwealth from
showing, in its prosecution of crime, that it and the money were
obtained by false pretences. To hold otherwise would be to
provide a shield for the criminal in his own crime. There is
nothing in this view of the law, which conflicts with the decision
in the recent case of *Commonwealth* v. *McDuffy*, 126 Mass. 467.
It was there held, that one who obtains only what is due him
by false pretences commits no punishable offence. It was not
held that the Commonwealth was estopped to prove the truth,
by a judgment to which it was not a party. The general doc-
trine, that only parties and privies are concluded by a judgment,
is too familiar to require the citation of authorities in its sup-
port. An application of it peculiarly pertinent to the case at
bar was made in *The Duchess of Kingston's case*, 20 Howell's
St. Tr. 355.

The indictment is not defective on the ground of remoteness of the false representations from the obtaining of the money. Ordinarily the question of remoteness is one for the jury, and can be presented to this court only on a report of the evidence after a refusal by the presiding judge to rule that the evidence will not warrant a conviction. As an objection to the indictment, it is in substance that the indictment shows that the money was obtained on a valid judgment, and therefore cannot be held to have been obtained by the false pretences. But this point is not tenable. The test is the direct connection between the pretence and the payment of the money. There was no purpose in either party to the transaction that the matter should go to the extent of entering up the judgment, and rest there; the judgment was, in and of itself, of no importance. It was only a means to an end, and it was for the jury to say whether the false pretences were an inducement for the payment.

In the case of *Regina* v. *Gardner*, Dearsly & Bell, 40, and 7 Cox C. C. 136, cited by the defendant, it was held that the false pretence was exhausted by obtaining a contract for lodging, and did not extend to the contract for board also, made after the defendant had been a lodger with the prosecutor for more than a week. In *Regina* v. *Bryan*, 2 F. & F. 567, board and lodging had been obtained by means of false pretences, and, some time after the contract therefor, the prisoner borrowed sixpence of the person with whom he had made the contract and was lodging, and it was held that the money was not obtained by the false pretence.

But in *Regina* v. *Martin*, L. R. 1 C. C. 56, it was held that the question of remoteness was for the jury, and that a conviction was warranted when the prisoner had ordered a van to be made, under the false pretence that he acted for the Steam Laundry Company of Aston, which he represented to be composed of leading men of Birmingham, and before it was delivered to him countermanded the order, and afterward agreed to receive it if certain alterations were made in it, which were made, and it was subsequently delivered. In that case it is said that, in order to justify a conviction, there must be a direct connection between the pretence and the delivery of the chattel, and that whether there is such a connection or not is a question for the jury;

and, further, that since the cases of `Regina` v. *Abbott*, 1 Denison, 273, and *Regina* v. *Burgon*, Dearsly & Bell, 11, it is impossible to contend seriously that the case is not within the statute, because the chattel is obtained under a contract induced by the false pretence.

The false representations and pretences set forth in the indictment are of such a character as to bring the transaction within the statute. It is sometimes said that a naked lie is not within the statute; and, as applied to particular cases, this is true; as when one falsely represents to a saloon-keeper that, a few days before, he gave the keeper five dollars out of which to take twenty cents in payment for drinks, and that the keeper did not return any change; *Commonwealth* v. *Norton*, 11 Allen, 266; or where one draws his check on a bank in which he has no money, and presents it at the bank for payment. *Commonwealth* v. *Drew*, 19 Pick. 179. In those cases the lie is told to one who has the same means with the liar of knowing what the fact is. In the case last cited it was said that passing a check drawn on a banker with whom the drawer has no account, and which he knew would not be paid, would be within the statute; and the English decisions are so. The difference between the two is merely that in one case the lie or false pretence is made to one who is in a situation to know the facts, and in the other to one who is not in such situation. The true rule seems to be, that a case is within the statute if the alleged false pretence is an intentionally false representation as to an existing fact or past transaction, made to one who has not the means of knowing the truth in the premises, for the purpose of inducing him thereby to part with his property.

This case comes up on exceptions to a refusal to quash the indictment, and it is argued that there was no such relation of trust and confidence between the defendant and the city of Lynn as would justify a belief in the representations made, and lay a foundation for an indictment under the statute. But, as has already been said, there are sufficient allegations to constitute a good indictment, and the question whether they were proved or not is one of evidence, and not of pleading. Moreover, it is not true, as matter of law, that one who is negotiating a settlement of an alleged claim for damages cannot bring himself

within the statute by making false representations and obtaining money thereby. In *Regina* v. *Copeland*, Car. & M. 516, the prisoner, a married man, who had obtained a promise of marriage from a single woman which she refused to fulfil, threatened her with an action at law for breach of her promise, and added that he could thereby take half her fortune from her, and she, believing the statement and threat, paid him one hundred pounds sterling. The prisoner was convicted, and the conviction was sustained by Lord Denman and Mr. Justice Maule.

The question whether the false pretences were believed and induced the payment is for the jury. To quash the indictment on the ground that the circumstances of the transaction would not justify a conviction, would be to quash it for matters *dehors* the record.

That the wrong is a private one is no objection to the prosecution, although it has been said in many cases that the statute is not intended for the punishment of every private wrong. In all the cases above cited in which a conviction was sustained the wrong was a private one, in the same sense as in the case at bar; it is a public wrong in this, as in those cases, in that it is within the statute which provides for punishment of the wrongdoer. The purpose of the statute was to extend the punishment to cases which were not reached by the common law, and its language is broad and comprehensive. Its operation ought not to be limited by phrases of indefinite meaning, which fail to state any principle of construction. *Exceptions sustained.*