` THE STATE, Appellant, v. FRAKER.

Division Two, February 21, 1899.

1. **False Pretenses**: UNCONSTITUTIONAL STATUTE. An indictment for obtaining money under false pretenses "by means and by the use of a trick and deception, and false and fraudulent representation, and false and fraudulent statement and pretense," is insufficient, though in the language of Revised Statutes 1889, section 3826, since such act violates the constitutional provision that the accused shall be informed of the nature and cause of the accusation.

2. **Indictment**: WORDS TO INTRODUCE NEW COUNT. The words, "the jurors aforesaid, on their oath aforesaid, do further present," in an indictment, should be used only to introduce a new count.

3. ———: VENUE: CRIME COMMITTED IN SEVERAL COUNTIES. An indictment for obtaining money under false pretenses, alleging a crime consisting of a series of acts committed in several counties, but constituting only one attempt, must distinguish by apt averments between the different venues, since the crime is dispunishable in either of the counties where not enough is done in one county to amount to a completed and punishable crime.

4. ———: VENUE OF FEDERAL COURT: JUDICIAL NOTICE. A State court will take judicial notice of the county of the State in which a federal circuit court sits.

5. ———: VENUE: ASPORTATION: FALSE PRETENSE. The common-law doctrine of asportation does not apply to prosecutions for obtaining money under false pretenses.

6. ———: FALSE PRETENSE: BY DROWNING. An indictment for obtaining money from an insurance company under false pretenses by the insured (defendant) pretending to have been drowned must allege to whom the pretense was made.

7. ———: ———: ———: LIFE INSURANCE: FALLING IN RIVER: MEANS OF FRAUD. The allegation that defendant, whose life was insured, pretended to fall, and fell, into a certain river in a specified county, does not constitute the offense of obtaining money under false pretenses in such county, where it is not alleged that the insured intended that his pretended drowning should be used as a means of obtaining the money on the policy.

8. ———: ———: ———: ———: ———: PAYMENT TO EXECUTOR: "INSTIGATED" BY DEFENDANT. One whose life was insured, and who pretended to be drowned, whereby his executor was enabled to collect the insurance, can not be convicted under an allegation that the false pretenses as to his death were made by the executor through the procurement of defendant, unless defendant "instigated" the executor to make such pretenses, which is not shown merely by his prior acts in obtaining the policy, pretending to drown, and his subsequent disappearance and concealment.

9. ———: ———: ———: ———: ———: ———: JUDGMENT BY AGREEMENT. A judgment by agreement, obtained without false pretenses, by the executor of the insured against the insurer on a policy, will not support a charge of obtaining money under false pretenses against the insured, who had only pretended to be dead.

State v. Fraker.

*Appeal from Ray Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for appellant.

(1) Defendant very strongly insisted in the lower court upon the fact that section 3826, Revised Statutes 1889, is unconstitutional. This section has been repeatedly declared to be constitutional in so far as the offense therein described is concerned. The form of the charge in the indictment therein given has alone met the disapproval of the court, and that only in the later decisions, as formerly it was held to be constitutional, which will be observed by reading the following decisions: State v. Levy, 119 Mo. 436; State v. Cameron, 117 Mo. 371; State v. Fleming, 117 Mo. 377; State v. Kain, 118 Mo. 5; State v. Benson, 110 Mo. 18. Although that part of section 3826, which describes the form of the indictment for offenses of this kind be unconstitutional, the whole of said section is not. That part describing the offense must be declared valid according to numerous holdings of this court. State ex rel. v. Field, 119 Mo. 612; State v. Clarke, 54 Mo. 17; Ensworth v. Curd, 68 Mo. 282; State v. Kring, 74 Mo. 612; St. Louis v. Railroad, 89 Mo. 44; Tarkio v. Cook, 120 Mo. 1; State v. Bockstruck, 136 Mo. 335; State v. Newell, 140 Mo. 282. In order to commit an offense under this section an attempt to obtain money, property or valuables from another by intentionally cheating or defrauding, is sufficient. All the counts in the indictment founded upon this section properly charge the attempt to commit the offense by defendant. In fact, the actual procuring of the money or property by means of corrupt and

fraudulent practices could have been charged against the defendant in the indictment, and a conviction for an attempt to commit a crime be obtained, provided the evidence was not of sufficient strength to warrant a conviction for obtaining the property.    State v. Frank, 103 Mo. 120; State v. Montgomery, 109 Mo. 646; Kelley's Crim. Law, sec. 1092, p. 762; State v. Flanders, 118 Mo. 227; St. Joseph to use v. Owen, 110 Mo. 448.    (2)    An indictment which alleges that the defendant did, knowingly, designedly, falsely and feloniously pretend, etc., sufficiently avers the scienter; as does an indictment which, setting out and negativing the pretenses, alleges "all of which the defendant then and there well knew."    8 Ency. of Pl. and Pr., pp. 861, 862; State v. Hurst, 11 W. Va. 54; State v. Janson, 80 Mo. 97; People v. Lennox, 64 N. W. Rep. 488; State v. Smallwood, 68 Mo. 192; State v. Kain, 118 Mo. 5; State v. Scott, 48 Mo. 422.    (3)    If upon its face the indictment charges the offense with requisite precision and formality it will not be quashed on the ground that it contains immaterial allegations, or that some one pretense charged is not properly charged.    State v. Joaquin, 43 Ia. 131; State v. Vandimark, 35 Ark. 396; Thomas v. People, 34 N. Y. 351; State v. Beasley, 59 Ala. 20; Cowan v. People, 14 Ill. 348; State v. Hathcock, 88 Ga. 91.    (4)    No objection can be made to the indictment because of its failure to charge defendant with attempting to directly obtain possession of the money which would be paid by the insurance company on account of the false pretenses used.    Payment to his estate or to his legal representatives, whether it be executor, administrator or creditors, would be, in law, payment to him.    Com. v. Drew, 19 Pick. 179; People v. Haynes, 11 Wendell, 557; People v. Herrick, 13 Wendell, 87; Franklin v. State, 52 Ala. 414.    (5)    In prosecutions for false pretenses it is not material to the jurisdiction of the court where the pretenses were made.    They may have been made in a different county, or made in one

county and the property obtained in another or in a different State from that in which the property was obtained. The obtaining of the goods, money or valuable thing by means of the false pretenses completes the crime and determines the venue of the trial. Stewart v. Jessup, 51 Ind. 413; State v. House, 55 Ia. 466; State v. Shaeffer, 89 Mo. 276; State v. Dennis, 80 Mo. 589; Norris v. State, 25 Ohio St. 217; Musgrave v. State, 32 N. E. Rep. 885; 2 Bishop's New Crim. Law, sec. 488; 1 Bishop's New Crim. Law, sec. 723; Bishop's Crim. Proc., secs. 53-58-61. (6) In order to establish the crime of obtaining money by false pretenses, or attempting to obtain money by false pretenses, it is not necessary that the person charged with the crime should be shown to have actually made the false pretenses personally to the parties whom he intended to defraud, but it may be sufficient to show that the party charged acted through an innocent agent in making such pretenses. False pretenses need not necessarily or solely be made by words, either spoken or written. If a person by his act or conduct induces another person to believe that a fact really is in existence when in reality it is not, and thereby obtains his money or property, or attempts to obtain his money or property, he comes within the scope of the statutes against false pretenses. 7 Am. and Eng. Ency. of Law, p. 721; People v. Oyer, 83 N. Y. 436; State v. Allred, 84 N. C. 749; State v. Alphin, 84 N. C. 745; Req. v. Kelleher, 14 Cox Criminal Cases, 48; State v. Goble, 60 Ia. 447; People v. Donaldson, 70 Cal. 116. (7) The indictment in the case under consideration does not seek to hold the defendant for "the obtaining of money by false pretenses," or by any means whatever, but expressly charged "an attempt to obtain" the same; and in such case the law, as accepted by text writers upon criminal procedure and in the adjudicated cases upon the question, undoubtedly is that the jurisdiction may be in the county where any attempt was made or in any county where

an overt act was done to carry out the fraudulent design or intent of the party making the attempt to commit such felony.

JAMES L. FARRIS, SR., A. S. LYMAN, JOHN DOUGHERTY and LAVELOCK, KIRKPATRICK & DIVELBISS for respondent.

(1) The section of statute under which the first and third counts were drawn (sec. 3826) is unconstitutional, and the motion to quash these counts was properly sustained on this ground. State v. Terry, 109 Mo. 601; State v. Cameron, 117 Mo. 371; State v. Fleming, 117 Mo. 377; State v. Kain, 118 Mo. 5. (2) In order to properly charge an offense under section 3940, the essential elements of the crime consummate must be as specifically alleged as though the primary offense was completed. The indictment does not contain such necessary averments and the motion to quash all the counts was correctly sustained for this reason. 1 Bishop's New Crim. Law, secs. 728, 737, 764; 2 Bishop's Crim. Pro. (2 Ed.), 194, 195; Kelley's Crim. Law and Practice (2 Ed.), 1092; State v. Montgomery, 109 Mo. 645; State v. Smith, 119 Mo. 446; State v. Harney, 101 Mo. 470; U. S. v. Cruikshank, 92 U. S. 542. (3) The indictment must be found in the county where the alleged offense was committed. The venue is there. The indictment herein does not charge, in any of the counts, the commission in Ray county of an offense prohibited by law. 1 Wharton, Crim. Law, sec. 181; Ex parte Slater, 72 Mo. 102; State v. Fitzgerald, 75 Mo. 571; State v. McGraw, 87 Mo. 161; State v. Hatch, 91 Mo. 568; State v. Smiley, 98 Mo. 605; In re McDonald, 19 Mo. App. 370; People v. Murray, 14 Cal. 160; U. S. v. Stephens, 8 Saw. 116; Hicks v. Com., 86 Va. 223; State v. Lung, 21 Nev. 209. (4) The indictment does not charge, in any of the counts, an "attempt," within the meaning of the criminal law, to commit the crime of "obtaining money by false pretenses," etc.,

and in the absence of such necessary averments the indictment was fatally defective and properly quashed. 1 Bishop's New Crim. Law, secs. 728-731; 1 Wharton, Crim. Law, sec. 173; People v. Murray, 14 Cal. 160; U. S. v. Stephens, 3 Crim. Law Mag. 536; State v. Lung, 21 Nev. 209; Hicks v. Com., 86 Va. 228; In re Schurman, 20 Pac. Rep. 277; State v. Calvin, 90 N. C. 717. (5) The indictment while distressingly prolix, is yet vexatiously vague, and fails in essential specific affirmations, which are always indispensable to inform defendant of the particular act or acts he must defend. 1 Bishop, Crim. Proc. (3 Ed.), secs. 86, 88, 325, 509; State v. Martin, 44 Mo. App. 45; s. c., 108 Mo. 117; State v. Green, 111 Mo. 588; State v. Austin, 113 Mo. 543; State v. Evans, 128 Mo. 412; State v. Stowe, 132 Mo. 204.

SHERWOOD, J.—This appeal is taken by the State because the trial court, on motion of defendant, quashed the indictment.

The bill of exceptions shows that the motion was "taken up and in all things sustained and that thereupon, the State by its attorney then and there excepted." Final judgment was then entered, holding the indictment insufficient in law and ordering the discharge of defendant.

The indictment covers twenty-four pages of printed matter and consists of five counts, one of which, as they all have a strong family likeness, will be sufficient to notice:

"In the Circuit Court of Ray county, Missouri, October term, 1895.

"State of Missouri, Plaintiff.

vs.

G. W. Fraker, Defendant.

State of Missouri, }
County of Ray.     } ss.

"The grand jurors for the State of Missouri, duly impaneled, sworn and charged to inquire of offenses within and

for the body of the county of Ray and State aforesaid, upon their oaths do present and charge that Geo. W. Fraker, on the 10th day of July, A. D. 1893, at the said county of Ray and State of Missouri, then and there being, did then and there unlawfully and feloniously and with the intent to cheat and defraud The Provident Life Assurance Society of New York, an insurance corporation duly and legally created and organized as an insurance company, under and by virtue of the laws of the State of New York, and authorized to do business in the State of Missouri, attempt to obtain from said The Provident Savings. Life Assurance Society of New York, the sum of ten thousand dollars, lawful money of the United States, of the value of ten thousand dollars, the money and property of said The Provident Savings Life Assurance Society of New York, by means and by use of a trick and deception, and false and fraudulent representation and false and fraudulent statement and pretense, in the manner and by means following, to wit:

"That the said Geo. W. Fraker, on the 11th day of March, A. D. 1893, procured from and caused to be issued to him, by said The Provident Savings Life Assurance Society of New York, one certain policy of insurance upon the life of him, the said Geo. W. Fraker, in the sum of ten thousand dollars, by which said The Provident Savings Life Assurance Society of New York undertook and agreed, upon the death of him, the said Geo. W. Fraker, to pay to his legal representatives, or assigns, upon proof of his death, the sum of ten thousand dollars, lawful money of the United States, and the said Geo. W. Fraker, on the 18th day of April, A. D. 1893, executed his last will and testament, in writing, in words and figures as follows, to wit:

" 'State of Missouri, County of Clay.

" 'I, Geo. W. Fraker, of Excelsior Springs, Clay county, Missouri, being of sound mind and memory, yet mindful of the uncertainties of life, do make and publish this, my last

will and statement, hereby revoking all other wills heretofore made by me.

"'First.—I will and direct that my executor hereinafter named pay all the expenses of my last sickness and all my burial expenses out of my estate as soon as convenient after my decease, and I prefer that my remains, or body, be cremated instead of being buried, and leave the matter to be determined by my executor as he, in his judgment, may think best.

" 'Second.—I will and direct that my executor sell and dispose of, at public or private sale, all my real and personal property at the highest and best price he can obtain therefor, except such policies of insurance as I may have at the date of my death and after, pay all my expenses of sickness and burial, and all my debts, to pay the balance as hereinafter directed.

" 'Third.—I have two policies of insurance on my life, for the aggregate amount of five thousand dollars, for the benefit of my two sisters, in equal parts. I direct the same to be, by the companies, directly paid over to them, or in the event of their death, or the death of either of them, to be paid to their children, the children of each sister receiving their mother's half of such insurance.

" 'Fourth.—All the balance and residue of my estate that may remain after payment of all the debts and charges and insurance hereinabove mentioned, I give, devise and bequeath to my esteemed brother-in-law, Geo. W. McGruder, of Macon county, Missouri, to be held and disposed of by him as hereinafter directed.

" 'Fifth.—My object and purpose in giving, devising and bequeathing the property mentioned in the foregoing clause of this will to my said brother-in-law, Geo. W. McGruder, is to enable him to care for and provide for the five youngest children of my deceased uncle, Geo. W. Fraker, deceased, late of Seattle, in the State of Washington, and I

hereby direct that out of the estate hereby devised and bequeathed to him that he provide' for the education, the support and maintenance of said five children, or the survivors of them, so that they may be qualified when they become of age to support and maintain themselves. When said children shall become of age, I hereby direct my said brother-in-law to make such disposition of the remainder of said funds, or the balance remaining in his hands, as he may think proper to the said children and my two sisters, or their children, taking into consideration the necessities and condition of the said children and my two sisters. If my brother-in-law aforesaid should die and his wife, my sister, survive him, I hereby authorize and empower her to take charge of said fund and exercise the power and discretion herein given to her said husband; and I further hereby direct that neither my brother-in-law nor his wife, my sister, shall be required to give bond, as trustee or guardian, to account for the estate herein devised and bequeathed to him or her, the real object, purpose and intent being to put said property in hands and charge of my said brother-in-law (or in the event of his death, in charge of my sister) to be used in any way he or his wife may think best to carry out the purposes and objects as hereinbefore stated.

" 'Sixth.—I hereby state, by way of information, that the bulk of my estate consists of life insurance policies that I now have in force and that I may have at the date of my death.

" 'Seventh.—I direct that my library of medical books be not sold by my executor, but be turned over to my brother-in-law, Geo. W. McGruder, to be disposed of by him in any way he may see proper, and he shall in no wise be held to account for same to any one, and I merely suggest to him that if any of my relatives choose the profession of medicine, he may give to them said library, or any part thereof, as he may deem expedient and proper.

" 'Eighth.—I hereby nominate and appoint James E. Lincoln, attorney-at-law, of Liberty, Missouri, the executor of this, my last will and testament, and request that he act as such executor and see that the same be carried out.

" 'In testimony whereof, I, the said Geo. W. Fraker, hereunto subscribe my name and affix my seal, at Liberty, in Clay county, Missouri, this 18th day of April, A. D. 1893.

" 'G. W. FRAKER.   (Seal.)

" 'The foregoing instrument of writing was signed and declared by the above-named Geo. W. Fraker, to be his last will and testament, in the presence of us, who, at his request and in his presence, have subscribed our names as witnesses thereto, this 18th day of April, A. D. 1893.

" 'CHAS. L. DOUGHERTY,
" 'R. J. STEPP,
" 'GEO. W. CORBIN.'

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present and say that the said Geo. W. Fraker, in the said unlawful and felonious attempt to commit said felony and toward the commission thereof, on the 10th day of July, 1893, in company with Geo. Harry, James A. Triplett, Alex. Menendez, Charles McGregor and E. S. Murray, left the city of Excelsior Springs, in said Clay county, and drove to a point on the Missouri river bank, near the town of Camden, in Ray county, Missouri, ostensibly and pretendedly to fish in the Missouri river, and then and there in the night time, and in the immediate presence of said Geo. Harry, James A. Triplett and one Jacob Crowley, unlawfully and feloniously, and with intent to cheat and defraud said The Provident Savings Life Assurance Society of New York, pretended to fall and fell in the Missouri river, disappeared, and concealed himself for a long period of time, to wit, for a period of more than two years, and then and there and thereby, and by the use and by the means

of said trick and deception and false and fraudulent pretense, and with the intent to cheat and defraud said The Provident Savings Life Assurance Society of New York, unlawfully and feloniously feigned and pretended that he, the said Geo. W. Fraker, at said time and place, died by drowning in said Missouri river, he, the said Geo. W. Fraker, then and there well knowing that said pretense was false.

"The said Geo. W. Fraker, on said 10th day of July, A. D. 1893, and for a long time prior thereto was a resident of Clay county, Missouri, and the executor of the said last will and statement, in good faith, and believing that the said Geo. W. Fraker was dead, presented said will to the probate court of Clay county, Missouri, for probate, and the said probate court, upon the testimony of said Geo. Harry, James A. Triplett and Jacob Crowley, and other witnesses, to the grand jurors unknown, found the said Geo. W. Fraker to be dead, and by its judgment admitted said will to probate, and granted a certificate of probate; the said executor duly qualified as the executor of the last will and testament of said Geo. W. Fraker, and in pursuance of the terms of said life insurance policy, issued by said The Provident Savings Life Assurance Society of New York, upon the life of said Geo. W. Fraker, as aforesaid, submitted proofs of the death of said Geo. W. Fraker to said The Provident Savings Life Assurance Society of New York, and thereafter on the ——— day of ——— 1894, instituted, in the circuit court of Clay county, Missouri, suit upon said life insurance policy, against the said The Provident Savings Life Assurance Society of New York; that such proceedings were had in said cause; that the same, on the ——— day of ——— 1894, was by said The Provident Savings Life Assurance Society of New York, on a petition and affidavit therefor, removed for trial from said Clay county circuit court, to the circuit court of the United

States for the Western Division of the Western District of Missouri, and on the 12th day of February, 1895, judgment by agreement was rendered by said court in said cause in favor of said executor and against said The Provident Savings Life Assurance Society of New York, upon said life insurance policy aforesaid.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present and say that the said Geo. W. Fraker, by use and by means of said trick and deception, and false and fraudulent pretenses, to wit, by pretending, as aforesaid, to be drowned in the Missouri river, and through the use and employment of said executor, and the law relating to the administration upon the estate of deceased persons, and the machinery by the law in such cases provided all as an innocent agency, did, unlawfully and feloniously, and with intent to cheat and defraud, attempt to deceive said The Provident Savings Life Assurance Society of New York, and to induce belief on its part that he, the said Geo. W. Fraker, was drowned in the Missouri river on the 10th day of July, A. D. 1893, and to induce it to rely upon said pretense and to part with the amount called for in said policies of insurance; whereas, in truth and in fact he, the said Geo. W. Fraker, was not drowned in the Missouri river on the 10th day of July, 1893, nor at any other time, but was, at said time, and now is, alive; and, whereas, in truth and in fact, the proofs of death so submitted to said The Provident Savings Life Assurance Society of New York, by said Geo. W. Fraker, by and through the innocent agency of the said executor, and by and through the operation of the law, in such cases provided, were false, all of which he, the said Geo. W. Fraker, then and there well knew.

"And so the grand jurors aforesaid, upon their oaths aforesaid, do present and say that the said Geo. W. Fraker, at the said county of Ray, in the State of Missouri, on the said 10th day of July, A. D. 1893, in the manner and by the

means aforesaid, unlawfully and feloniously, and with the intent to cheat and defraud, attempted to obtain from said The Provident Savings Life Assurance Society of New York, the said sum of ten thousand dollars, lawful money of the United States, of the value of ten thousand dollars, the money and property of said The Provident Savings Life Assurance Socity of New York, by means and by use of the said tricks and deceptions, and false and fraudulent pretenses of the value of ten thousand dollars, as aforesaid, but he, the said Geo. W. Fraker, did then and there fail in the perpetration of said felony, and was prevented and intercepted in executing said attempt and felony, by his capture and arrest, by John M. Wilkerson, in the woods of the State of Minnesota, on or about the first day of September, A. D. 1895, against the peace and dignity of the State of Missouri."

1. The first count, now being discussed, was drawn under the provisions of section 3826, Revised Statutes 1889, which has frequently been pronounced by this court to be unconstitutional. [State v. Terry, 109 Mo. 601; State v. Cameron, 117 Mo. 371; State v. Fleming, 117 Mo. 377; State v. Kain, 118 Mo. 5; State v. Levy, 119 Mo. 434.]

· Therefore, expressions and allegations allowable under that statute are no longer allowable and when used, convey no meaning. From this reason it follows that the use of the words "by means and by use of a trick and deception, and false and fraudulent representation and false and fraudulent statement and pretense," in the count being reviewed, must be held as if a blank had occurred where those words occur.

2. Our statute, section 4107, Revised Statutes 1889, provides that: "It shall not be necessary to state any venue in the body of any indictment . . . but the county or other jurisdiction named in the margin thereof shall be

taken to be the venue for all the facts stated in the body of the same."

Under this statute, the venue stated in the margin of the indictment is taken to be the venue for all the facts stated in the body of the same, and in the present instance, the county thus named is Ray.  This statute rule, however, only results in a *prima facie* case of venue where no other allegations respecting venue appear in the indictment.  But where two or more venues are laid in an indictment, as in the case at bar, then, of course, it becomes necessary for the pleader by apt averments to distinguish between the different venues.  The pertinency of these remarks will presently appear.  Not content with Ray county as the marginal venue the pleader leads off by alleging that it was in Ray county that defendant on the tenth day of July, 1893, with intent to cheat and defraud, etc., attempted to obtain from, etc., the sum of $10,000 by means and by use, etc., in the manner and by the means following, to wit.

Then it is set forth that on the eleventh day of March, 1893, defendant procured and caused to be issued to him by, etc., the sum of $10,000 by means and by use, etc., in the death to his legal representatives or assigns.

Then it is stated that on the eighteenth day of April, 1893, defendant made his last will, etc., which is set out *in extenso,* whereby it is provided that his property, upon his death, is to go to certain relatives.  Then the grand jurors, etc., say that defendant "in said unlawful and felonious attempt to commit said felony and toward the commission thereof, on the 10th day of July, 1893, left Clay county with a number of others and went ostensibly and pretendedly to fish in the Missouri river, and having reached that stream in Ray county, and with intent to cheat and defraud, etc., pretended to fall, and fell in the Missouri river, disappeared, and concealed himself for a long period of time, to wit, for a period of more than two years, and then and there

and thereby, and by the use and by the means of said trick and deception and false and fraudulent pretense, and with the intent to cheat and defraud said The Provident Savings Life Assurance Society of New York, unlawfully and feloniously feigned and pretended that he, the said Geo. W. Fraker, at said time and place, died by drowning in said Missouri river, he, the said Geo. W. Fraker, then and there well knowing that said pretense was false."

Then allegations are made that defendant on the tenth day of July, 1893, and for a long time before that was a resident of Clay county; that the executor in good faith, etc., presented defendant's will to the probate court of that county, where on due proof it was admitted to probate and a certificate thereof granted; that the executor thereupon qualified, and after submitting proofs, etc., instituted suit on the policy in the circuit court of Clay county, which suit was duly removed to the circuit court of the United States for the Western Division of the Western District of Missouri, and on February 12, 1895, judgment by agreement was rendered in favor of the executor, etc,, etc.

Again, the grand jurors aforesaid, come forward and say that defendant by use, etc., and by pretending to be drowned, etc., through the use and of the employment of the executor and the machinery of the law as an innocent agency, did, unlawfully and feloniously, and with intent to cheat and defraud, attempt to deceive said The Provident Savings Life Assurance Society of New York, and to induce belief on its part, that he, the said Geo. W. Fraker, was drowned in the Missouri river on the tenth day of July, A. D. 1893, and to induce it to rely upon said pretense and to part with the amount called for in said policies of insurance; whereas, in truth and in fact, he, the said Geo. W. Fraker, was not drowned in the Missouri river on the 10th day of July, 1893, nor at any other time, but was, at said time, and now is, alive; and, whereas, in truth and in fact,

the proofs of death so submitted to said The Provident Savings Life Assurance Society of New York, by said Geo. W. Fraker, by and through the innocent agency of the said executor, and by and through the operation of the law, in such cases provided, were false, all of which he, the said Geo. W. Fraker, then and there well knew.

For the fourth time the grand jurors aforesaid, appear in evidence and say that "defendant in the manner and by the means aforesaid, etc., and with the intent, etc., attempted to obtain from, etc., the amount of said policy, by means and by use of, etc., but defendant did fail in the perpetration of said felony, and was prevented and intercepted in the execution of said attempt, etc., by his capture and arrest, etc., in the woods of Minnesota, in September, 1895." The foregoing I regard as a fair resume of the chief points of the first count in the indictment.   Ordinarily, the words "the jurors aforesaid, on their oath aforesaid do further present," are proper for introducing a new count, though they do not necessarily mean that a new count begins with them.   They should, however, only be employed for their one legitimate purpose, viz.: that of beginning a new count. [1 Bishop, New Cr. Proc., secs. 132, 133, and notes; Ibid, sec. 429; Bishop, Dir. & Forms, sec. 115, note.]

Lengthened out as is this count by lavish use of verbiage the frequent repetition of the words "and the grand jurors aforesaid," etc., as if to begin a new count, as is the custom of good pleaders, tends only to confusion.   But waiving matters of mere form, I proceed to discuss the merits and substance of the count.

It will have been observed that the count attempts to allege an attempt to commit a crime.   It fails however in doing this in several particulars, for several reasons, to wit:

a.   All of the acts alleged, constitute in the aggregate, but one alleged attempt, but this series of acts is scattered

through several counties, Ray, Clay and the county in which the circuit court of the United States for the Western Division of the Western District of Missouri is held, to wit, Jackson; of which venue judicial notice will be taken. When, as here, a crime consisting of a series of acts, part done in one county and part in another, it is dispunishable at common law in either, unless enough be done in one county to amount to a completed and punishable criminal act [1 Bishop, New Cr. Proc., secs. 54, 55 and cases cited]; and this rule holds in the absence of statutory enactment to the contrary. [Ib., sec. 56.] The common law doctrine of asportation has no place in prosecutions for cheats by false pretenses. [Reg. v. Stanbury, 9 Cox C. C. 94; 2 Whar. Cr. L. (9 Ed.), sec. 1208.] (Whether such a statute would be valid under our organic law is *dehors* the present record.)

b. The count under review would seem to indicate that the policy was obtained in Ray county and the will also executed there, though from its face the latter would appear to have been executed in Clay; but it does not matter where obtained or where executed since neither of these instruments are alleged to have been obtained or executed by or through any false pretense; and if such an allegation had been made it would have been simply a high grade solecism. In addition to that it is not alleged to whom defendant pretended that "he died by drowning in said Missouri river." Nothing is better settled in prosecutions of this sort than that such an omitted allegation is fatal to the indictment, whether it be for obtaining or attempting to obtain any given thing. [Queen v. Sowerby (1894), 2 Q. B. 173; In re Schurman, 20 Pac. Rep. 277; People v. Cline, 44 Mich. 290; 2 Bishop New Cr. Proc., sec. 173; State v. Horn, 93 Mo. 190.]

And surely the mere allegation that defendant "pretended to fall and fell in the Missouri river" would not constitute an offense in Ray county. In order that the indictment should be sufficient in this regard, it should charge the

doing of some overt act in that county, which, but for the intervention of superior and exterior forces, would have resulted in the money being obtained. [People v. Murray, 14 Cal. 160.] But here it is not even alleged that defendant intended that his pretended drowning should be used as a means of obtaining the money on the policy.

Says Wharton: "Mere preliminary preparation in character indifferent can not . . . . . . . be regarded as guilty attempts. Thus, walking down a street to a druggist's where poison is sold would not be indictable as an attempt to poison; but purchasing the poison and putting it in the way of other human beings would be so indictable. So purchasing a gun is not indictable as an attempt, but aiming it is. So owning a false weight is not itself indictable, but using it as a means of cheating is evidence, when connected directly with the proposed wrong, of an attempt to cheat. . . . . In other words, to make the act an indictable attempt, it must be a cause as distinguished from a condition. And it must go so far that it would result in the crime unless frustrated by extraneous circumstances." [1 Crim. Law (9 Ed.), sec. 181.]

Bishop says: "An indictable attempt consists of a specific intent to do something which constitutes a substantive crime, and an act toward but short of its completion." [2 New Crim. Proc., sec. 71.]

In United States v. Stephens (3 Crim. Law Mag. 536, s. c. 8 Saw. 116), the defendant, a resident of Alaska, ordered one hundred gallons of whisky to be shipped to him in Alaska by a wholesale whisky dealer in San Francisco with intent to introduce said whisky into Alaska. The territorial laws of Alaska provided that "if any person shall introduce or attempt to introduce any spirituous liquors or wines into said territory, he shall be fined, etc." In deciding the case, Judge Deady, said: "As the matter then

stood, it was impossible for the defendant to attempt to introduce this liquor into Alaska, because he did not own or control it.   It was simply an attempt to purchase—an act harmless and indifferent in itself, whatever the purpose for which it was done.   But suppose the defendant had gone farther, and actully succeeded in purchasing the liquor, wherein would the case differ from that of the person who bought the gun or poison with intent to commit murder, but did not subsequently act in execution of such purpose?   In all essentials they are the same.   A purchase of spirituous liquor at San Francisco or Portland, either in person or by written order or application, with intent to commit a crime with the same, as to dispose of it at retail without a license or to a minor, or to introduce it into Alaska—is merely a preparatory act, indifferent in its character, of which the law, lacking the omniscience of Deity, can not take cognizance."

Hicks was indicted for attempting to poison one Anderson. Hicks, as charged in the indictment, purchased the poison and delivered it to another, soliciting her, for a promised reward, to administer the same; but it was not charged that the solicitee agreed to administer the poison or did any act toward the commission of the crime.   In commenting on the insufficiency of the indictment, Lewis, P., said:   "An attempt to commit a crime is compounded of two elements:   1.   The intent to commit it; and 2.   A direct, ineffectual act done towards its commission.   [Code, sec. 3888; 2 Bishop's Crim. Proc., sec. 71.]   Or as Wharton defines it, 'an attempt is an intended, apparent, unfinished crime.'   Therefore, the act must reach far enough toward the accomplishment of the desired result  to amount to the commencement of the consummation.   It must not be merely preparatory.   In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated it must approach sufficiently

near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made. [Uhl v. Commonwealth, 6 Gratt. 706; McDade v. People, 29 Mich. 50." Hicks v. Com.,86 Va. 223.]

Recognition was given to the same principle by the Supreme Court of Pennsylvania: There the defendant was indicted and convicted for an attempt to administer poison, under a statute the provisions of which were substantially the same as those of our own statute. It was proved at the trial that the defendant, in a conversation with a witness, Neyer, stated his grievance against his intended victim, Waring, and his determination to be revenged, and then solicited Neyer to put poison in Waring's spring, so that he and his family would be poisoned, offering him a reward therefor. He also gave him directions how to administer the poison, and gave him the poison to be administered. But the witness refused to have anything to do with it, and handed it back to the defendant, and testified that he never intended to administer it.

Upon these facts the Supreme Court held that all that occurred at the interview with the witness and the legal inferences deducible therefrom, followed by no other act, were not sufficient to warrant a conviction for an attempt to commit the felony charged; that the act proved did not approximate sufficiently near to the commission of murder to establish an attempt to commit it within the meaning of the statute, and the judgment was accordingly reversed. "Merely soliciting one to do an act," said the court, "is not an attempt to do that act. . . . In a high, moral sense, it may be true that solicitation is an attempt; but in a legal sense, it is not." [Stabler v. Commonwealth, 95 Pa. St. 321.]

The case of Griffin v. State, 26 Ga. 493, relied on by the State, is not in line with the authorities heretofore cited.

And as to Musgrave v. State, 32 N. E. Rep. 885, also relied on, was not an attempt; it was a clear case of conspiracy to defraud the United States Mutual Accident Association, with acts done pursuant to such conspiracy, to wit, the obtaining of a policy on the life of defendant, a skeleton procured and placed in a building then temporarily occupied by defendant, the firing and burning down of the building and the flight of defendant, and all these acts were done in Vigo county. It is scarcely necessary to say that case bears no resemblance to the one under discussion.

In re Schurman is a case which in many of its features bears a strong resemblance to the one here presented; there the sufficiency of the information under which defendants were held was questioned by habeas corpus. One of the syllabi of that case prepared by the court announces the substance of the information and the ruling thereon, thus: "A charge that certain persons caused one of their number to have his life insured for the benefit of his wife, and then falsely pretended that the insured was injured; that he died, and was buried; that his body was stolen from the grave; that all was done for the purpose of obtaining the insurance money from the insurer; and that they were frustrated in the attempt before the offense was consummated; without alleging to whom the false representations and pretenses were made; and without stating that the beneficiary in the policy was connected or cooperated with them in the attempt, or had any knowledge of their acts or purposes; and which does not state that the defendants intended to lead the beneficiary to believe that the insured was dead, or to procure her to present a claim for the insurance money, or to obtain from her the policy or a transfer of the same; and which did not aver the means by which the money was intended to be obtained—does not constitute a punishable attempt to obtain money by false pretenses." [20 Pac. Rep. 277.]

In concluding his remarks in that case, JOHNSTON, J., observed: "When the facts are so alleged, the means must

at least be apparently sufficient to have accomplished the fraud, if the attempt had not been frustrated. Here Mrs. Reddington, the beneficiary, stood between the attempt and the execution. All of the steps taken, and specifically alleged to have been intended, would not have operated to defraud the company. If Reddington was injured, had died, and had been buried, as was pretended, then, so far as the information shows, there was still no apparent ability on the part of the defendants to commit the fraud. Mrs. Reddington, as has been stated, is not charged with cooperating in any way with the intended fraud. There is no statement that it was their intention to use her or the policy which she held to effect their purpose. Being the beneficiary, with the control of the policy, she effectually blocked the defendants from perpetrating a fraud on the company. If what was charged would naturally have resulted in inducing the company to part with its money, such attempt would probably be an offense; 'but when between the attempt and the execution is interposed the volition of an independent moral agent, then, by stress of the definition just given, an indictable attempt is not made out.' [1 Whart., Crim. Law, secs. 177, 178.]"

3. There are yet other grounds for holding this count insufficient: Because, where false pretenses are alleged to have been made by a third person through the procurement of the defendant, such allegation can not be supported except by evidence that the defendant instigated such person to make them. [People v. Parish, 4 Denio, 153; 2 Whart., Cr. Law (9 Ed.), sec. 1172; 2 Bishop, New Cr. Proc., sec. 193.]

Now the word "instigate" means "to stimulate or goad to an action, especially a bad action." Standard Dictionary. One of its synonyms is "abet" which means in law "to aid, promote or encourage the commission of an offense." [Ibid.]

The word "instigate" then, taken in its common acceptation must be taken as used in an evil sense, when employed in circumstances such as here presented. And certainly defendant can not be said to have instigated the actions of Lincoln, the executor, by his prior acts in obtaining the policy nor in executing the will, nor in falling or pretending to fall into the Missouri river, nor in his subsequent disappearance and concealment, since a person "is not criminally responsible for acts of independent third parties in the subsequent use, without any privity with him, of instruments of fraud constructed by him." [2 Whart., Crim. L. (9 Ed.), sec. 1202, and cases cited.] Nor could it be said that defendant, being yet alive, was "in privity" with his executor.

4. Moreover, the indictment alleges that "on the 12th day of February, 1895, judgment by agreement was rendered by said court in said cause," etc. There is in the count no allegation that the executor obtained the entry of this "judgment by agreement" through any false pretenses, and if it had, no request of defendant is alleged that the executor do this.

Besides, it has been ruled that even where a judgment has been obtained by consent through false pretenses, and the money collected under such judgment, that this is not obtaining money under false pretenses. [Com. v. Harkins, 128 Mass. 79.]

Now, if a judgment by consent obtained by means of false pretenses, is not invalidated thereby, a fortiori "a judgment by agreement," obtained without any false pretenses, seems wholly inconsistent with any theory of successful prosecution of an attempt to commit such an offense.

The difficulties with which the pleader has had to contend in this instance, seems to be insurmountable, no matter how the facts may be stated.

It results from these premises that the judgment quashing the indictment must be affirmed. All concur.