COMMONWEALTH *vs.* PHILIP J. ARONSON.

SAME *vs.* SAME.

Worcester.   September 21, 1942. — October 29, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Larceny.   Conspiracy.   Probate Court,* Decree.   *Judgment.*

Conviction for conspiracy to steal and stealing a savings bank deposit standing in the name of the judge of probate for the legal representatives of a decedent was warranted on evidence justifying findings that the defendant, in conjunction with another, by use of a power of attorney purporting to be signed by the heirs of the decedent, which was a forgery and known by him to be such, procured decrees of the Probate Court appointing him administrator of the decedent's estate and authorizing his withdrawal of the deposit, thereupon withdrew the deposit and never paid any part of it to the heirs, all with intent to convert the money to his own use; the fact that he acted under decrees was no defence.

INDICTMENTS, found and returned on October 22, 1941.

The cases were tried before *Hammond,* J.

*A. Van A. Thomason,* (*C. S. Hartwell* with him,) for the defendant.

*C. S. Barton,* Assistant District Attorney, (*O. A. Hoban,* District Attorney, with him,) for the Commonwealth.

RONAN, J.   Aronson and Perriello, both attorneys at law, have been indicted, tried and convicted for a conspiracy to steal and for stealing a deposit in a Worcester savings bank which stood in the name of the judge of probate for the legal representatives of Eva Judonys.  Perriello has waived his exceptions.  The exceptions of Aronson are to the refusal of the judge to direct verdicts of not guilty.

Perriello on May 21, 1940, mailed to Mr. Selzo, an attorney in Worcester, a petition for the appointment of Aronson as administrator of the estate of Eva Judonys, accompanied by a surety company bond and a power of attorney running to Aronson. These documents were enclosed in a letter which stated that the intestate had died on October 16, 1921, at Vilna, Lithuania, leaving a daughter and a grandchild "who signed the enclosed power of attorney to my associate Atty Philip J. Aronson." This petition stated that the only heirs at law were Matilda Kaskona and George Konda, residing in Nova Scotia, Canada. The petition was signed by Aronson and sworn to before Perriello. It was assented to by Aronson as attorney in fact for Kaskona and Konda. Aronson's signature to the bond was witnessed by Perriello. The power of attorney purported to be signed by Kaskona and Konda and acknowledged at Halifax, Nova Scotia, on May 2, 1940, before Francis D. Smith, a notary public. Aronson was appointed administrator on May 22, 1940. Perriello, on May 21, 1940, sent to Mr. Selzo a petition for authority to the administrator to withdraw the savings bank account. This petition was signed by Aronson and acknowledged before Perriello. The letter from Perriello enclosing this petition stated that the bank would pay without awaiting the twenty-day period for appeal as "This matter has been discussed with the bank and only last week they followed my instructions and paid me upon presentation of the proper documents." The letter further stated that Perriello understood that Aronson would mail a check for $100 to Mr. Selzo for his services and that he would guarantee the payment of this amount by Aronson. This petition was allowed. The deposit was withdrawn by Aronson who received a check for $713.64 from the savings bank. He' exchanged this check for one from Mr. Selzo, cashed the Selzo check and paid him $100. Aronson filed his first and final account on April 22, 1941. It was assented to by Aronson as attorney in fact for Kaskona and Konda. The only asset was the amount of the deposit. According to this account all this amount was expended by the payment

of $100 to Mr. Selzo, $100 to Aronson for his fee as administrator, $13.64 for incidentals, and the payment on August 21, 1940, of $250 each to Kaskona and Konda as their distributive shares. After the filing of this account Mr. Selzo informed Aronson that the judge was not satisfied with the account. This account has never been allowed. A few days before the return of the indictments, Aronson filed a petition in the Probate Court alleging that since the entry of the decrees appointing him administrator and authorizing the withdrawal of the deposit he had learned that the petitions were filed and the decrees were entered "as a result of misrepresentations by a person or persons whose real identity is not known to this petitioner." This petition was allowed and Aronson deposited in the savings bank the amount he had withdrawn.

Smith testified that he did not acknowledge the power of attorney; that the signature thereon was not his signature; that the impression of the seal stamped into this document was not made by his seal; and that Kaskona and Konda never came to his office. The register of probate testified that he mailed letters to Kaskona and Konda but they were returned. The defendants rested upon the evidence of the Commonwealth.

The question presented is whether the jury could find that the power of attorney was a forgery and that Aronson, knowing that it was, used it in conjunction with Perriello to secure the appointment of himself as administrator for the purpose of obtaining for themselves the money in the savings account.

It is undisputed that Aronson knew of and used the power of attorney to obtain the money. Notwithstanding the contention of Aronson, hereinafter called the defendant, we find nothing in the record that precludes the Commonwealth from contending that Kaskona and Konda, if they were real persons, never executed the power of attorney, nor from contending that they were fictitious persons and that the so called power of attorney was a sham fabricated for the purpose of fraudulently obtaining the possession of this account.

Here was a power of attorney purporting to have been given to the defendant by the sole heirs of a decedent for the purpose of enabling him to administer the estate, collect the assets, and pay over to them their distributive shares. If the power itself, if genuine, did not create a relation of trust and confidence between the heirs and the defendant, it at least furnished the ostensible ground for the creation of such a relation by setting in motion proceedings that culminated in the appointment of the defendant as administrator. An instrument of such a character and effect is not ordinarily given to a stranger, and the one upon whom the power is conferred would naturally be expected to know the circumstances attending the execution and delivery of such a document, the reason for his selection, and something about his principals including their addresses. If the power resulted from the activity of a third person, it is hard to believe that the identity of such person was unknown. Powers of attorney for the purpose of enabling one to be appointed an administrator are not in general circulation, passing indiscriminately from one person to another. Moreover, the misrepresentation mentioned in the last petition filed in the Probate Court by the defendant could be found by the jury to refer to the power of attorney, and they could consider the statement concerning the alleged misrepresentation as an admission by the defendant that the power of attorney was a forgery. The position of the defendant with reference to the possession and use of this power of attorney by himself or by the codefendant in furtherance of a common design is somewhat similar to what it would be if they were charged with forging or uttering the power of attorney, where the general principle would apply that the possession and use of a forged instrument of such a nature as a power of attorney by a defendant were "strong evidence tending to prove that he forged it, or caused it to be forged." *Commonwealth* v. *Talbot,* 2 Allen, 161, 163. *Commonwealth* v. *Bond,* 188 Mass. 91. *State* v. *Maxwell,* 151 Kans. 951, 963. *People* v. *Campbell,* 160 Mich. 108. *State* v. *Williams,* 152 Mo. 115. *State* v. *Peterson,* 129 N. C. 556. *State* v. *Regna,* 108 N. J. L. 232.

The defendant, however, could not be convicted on either of these indictments if the evidence showed no more than that the power of attorney was a forgery. The burden was upon the Commonwealth to prove that when he was appointed administrator he knew that it was a forgery. The defendant must be shown to have acted with a fraudulent intent. Aronson filed his first and final account on April 22, 1941. The account does not disclose the payment of anything to the codefendant for the services that the record shows he rendered in the administration of this estate. In the next place, there was evidence that Aronson on July 22, 1940, paid the premium on his bond as administrator. The account shows no such payment. Finally, the account sets forth payments on August 21, 1940, of $250 each to the alleged heirs. These payments, according to the account, were made within three months of his appointment. If these payments were made to the alleged heirs it would seem that witnesses would be available to the defendant to prove this fact. If the payments were made in cash it is unlikely that they would be made to persons unknown to the defendant. If they were made by check or money order, records of a bank or the post office would tend to support the claim of payment. If the payments were actually made, then it is difficult to understand why the defendant would not insist upon being credited for the amounts of these payments instead of seeking permission to redeposit the entire amount withdrawn. When he was informed by Mr. Selzo shortly after the account was filed that the judge was not satisfied with it, he did nothing in so far as the record discloses until he filed, on October 17, 1941, his petition to vacate the decrees and for leave to redeposit the money. The intent of the defendant was to be determined from his conduct. The jury could find that no payments were made to either of the alleged heirs and that these two items in the account were intentionally false and made for the purpose of concealing the conversion of this money — all of which he wanted and received in the form of cash — to the personal benefit of himself and his codefendant. A jury could find upon all the evidence,

together with the inferences, which need not be necessary or unescapable so long as they were reasonable and warranted, that the power of attorney was a forgery, and that the defendant with knowledge of this fact used the power to secure his appointment as administrator for the purpose of wrongfully obtaining title to the money in the account. *Commonwealth* v. *Cooper*, 264 Mass. 368. *Commonwealth* v. *Bader*, 285 Mass. 574. *Commonwealth* v. *Cavedon*, 301 Mass. 307. *Commonwealth* v. *Albert*, 310 Mass. 811.

The evidence was sufficient, if believed, to show that both defendants were acting in concert for the accomplishment of a common purpose, which was to obtain the money for their own benefit, and that they were guilty of a conspiracy to steal, *Commonwealth* v. *Smith*, 163 Mass. 411; *Commonwealth* v. *Riches*, 219 Mass. 440; *Commonwealth* v. *Morrison*, 252 Mass. 116; *Commonwealth* v. *Galvin*, 310 Mass. 733, and that they were guilty of larceny of the money which was fraudulently obtained by means of a false pretence. *Commonwealth* v. *Langley*, 169 Mass. 89. *Commonwealth* v. *Carver*, 224 Mass. 42. *Commonwealth* v. *Peakes*, 231 Mass. 449. *Commonwealth* v. *Jacobson*, 260 Mass. 311. *Commonwealth* v. *O'Connell*, 274 Mass. 315. *Commonwealth* v. *Anthony*, 306 Mass. 470.

The defendant's final contention is that he cannot be found guilty on either indictment because the planning to obtain or the obtaining of the money by virtue of a decree of the Probate Court cannot be said to constitute a conspiracy to steal or the commission of larceny by a false pretence. He relies upon *Commonwealth* v. *Harkins*, 128 Mass. 79. It was there held by a closely divided court that one could not be found guilty of larceny who, by a false pretence, had obtained money in pursuance of a judgment against a city for injuries alleged to have been caused by a defective highway, when the city was induced to consent to the entry of the judgment by the fraudulent representations of the defendant made to the city solicitor. At least there were adversary parties in that action and the city actually consented to the judgment. Here not a single party in interest was before the court, and the defendant

was in fact an absolute stranger to the proceeding without any actual right to appear in behalf of anybody in interest. It would be difficult to imagine a proceeding more lacking in substance. A person against whom a judgment is procured by fraud or collusion may prevent its enforcement. *Connor* v. *Haverhill*, 303 Mass. 42. *Fistel* v. *Car & General Ins. Corp. Ltd.* 304 Mass. 458. It was recently said of a judgment entered by default, after service at the alleged last and usual place of abode of a defendant who in fact had removed prior to such service and was living in another State, that such a "judgment was one in name and form only. In law it was no judgment at all, but a nullity." *Rogan* v. *Liberty Mutual Ins. Co.* 305 Mass. 186, 188. We do not think the general principle, that decrees of the Probate Court are not subject to collateral attack, *Farquhar* v. *New England Trust Co.* 261 Mass. 209, should be stretched to the extent of furnishing a shield to one who, without actual or constructive notice to anyone in interest, fraudulently obtains a decree for the purpose of swindling an estate. *Commonwealth* v. *Harkins*, 128 Mass. 79, must be confined to its peculiar facts, and must not be understood to grant immunity in every case where what would ordinarily be regarded as the misappropriation of funds of another is accomplished by means of a judgment or decree, irrespective of the circumstances under which the judgment or decree was entered. See *Mowrey* v. *State*, 122 Tex. Cr. 456. Furthermore, one of the principal reasons for the majority opinion in the *Harkins* case was that to regard the judgment as a false pretense "would practically make all civil actions for the recovery of damages liable in such cases to revision in the criminal courts" (page 83) and has no application here where the decree of the Probate Court had been vacated upon the defendant's petition two months before the trial of the indictments.

*Exceptions overruled.*