## F. H. HARTMAN, Respondent v. FROST-TRIGG LUMBER COMPANY, Appellant.

**St. Louis Court of Appeals, October 21, 1902.**

Contract: COUNTERCLAIM: PLEADING: ACTION. Plaintiff sued the defendant for a balance due on certain lumber; defendant presented a counterclaim on account of plaintiff's failure to ship a portion of the lumber as agreed; at the trial defendant introduced letters showing that while the contract was being performed, defendant had requested plaintiff to delay shipment for a few days and plaintiff did withhold further shipments as requested during those days. *Held*, that this was not a modification of the contract that precluded the defendant from recovering damages on his counterclaim on the ground that the alleged modification was not pleaded in the counterclaim.

Appeal from St. Louis City Circuit Court. — *Hon. Horatio D. Wood*, Judge.

REVERSED AND REMANDED.

*Carter & Sager* for appellant.

(1) The contract was not changed by the letters between the parties, dated March 28 and March 30, and April 4, 1899. In order to change a contract there must be the same unity of mind and definiteness of understanding as is required in the creation of one. (2) There was no substitution of a date for delivery, so if there was a change it was a mere waiver of the date set for completion, leaving the contract without a date for its fulfillment. In that case plaintiff would be limited to a reasonable time within which to deliver the lumber. Bryant v. Saling, 4 Mo. 522; Salisbury v. Renick, 44 Mo. 534. (3) The issue is really determined by a test of the pleadings as the facts are all pleaded. If appellant's second counterclaim states a cause of

action which could be cured by a verdict, the court erred in sustaining an objection to the testimony. Jones v. Phila. Underwriters, 78 Mo. App. 296; Marshall v. Ferguson, 78 Mo. App. 645; Kansas City v. American Surety Co., 71 Mo. App. 315; Malone v. Fidelity & Casualty Co., 71 Mo. App. 1.

*F. H. Sullivan* for respondent.

(1) The contract declared upon was a contract to deliver lumber by installment and complete the delivery on or before April 15, 1899. R. S., 605; Brady v. Hill, 1 Mo. 315; Kinney v. Miller, 25 Id. 578; Bank v. Harris, 54 Mo. App. 159; Weber v. Squier, 51 Mo. App. 604. (2) Appellant's own evidence showed that the contract as to time of delivery had been modified by the parties and the pleading should, therefore, have declared upon the modified contract, and there could be no recovery under the original. Lanitz v. King, 93 Mo. 519; Harrison v. Railway, 50 Mo. App. 336; Halpin v. School District, 54 Id. 376; Maack v. Schneider, 51 Mo. App. 99. (3) Appellant has not brought enough of the record here to enable the court to review this question. Smith v. Baer, 166 Mo. 404; Brand v. Cannon, 118 Id. 598; Way v. Miller, 91 Mo. App. 53; Dixon v. Thomas, Id. 364.

GOODE, J.—A point of practice is involved in this appeal by reason of the court having excluded testimony offered by the defendant to sustain a counterclaim based on plaintiff's alleged failure to perform a certain contract, which ruling was made on the theory that the defendant itself, before offering the rejected · testimony, had proven the contract was modified.

Said contract was made by correspondence and telegrams between the parties in January, 1899, and provided for the sale by the Hartman Lumber Company, of Brookhaven, Mississippi, which seems to have been F. H. Hartman's business style, to the Frost-Trigg Lumber Company, of a bill of lumber at stipulated

prices, and that shipments of lumber should commence at once and be completed by or before the fifteenth day of April next ensuing. The lumber was to be shipped to Chicago to a contractor incorporated under the name of Wm. Goldie & Sons Company, to which the Frost-Trigg Lumber Company had contracted to furnish it. The latter company gave plaintiff this direction in regard to shipments in a letter dated February 1:

"You had better ship this bill in rotation, beginning at the top, for that is about the order the timber will go into the building."

The contract called for various kinds of lumber of different dimensions enumerated in an appended list, and that direction was for shipments according to the order of the listed items. After three cars had been shipped, to-wit, March 28, defendant wrote plaintiff a letter telling him not to ship any more lumber until further instructions were given, because the weather was so bad in Chicago the contractor had been unable to complete the foundation of the building, into which the lumber was to go, and there was no room about the building site to unload more lumber until that already received had been used. The letter concluded as follows:

"The contractor seems to think that he will be ready for the timber by about the middle of April. We are very sorry to stop you from shipping, as we know how much inconvenience such a stop will cause you, but we are in a measure bound to obey our customers' instructions, and we hope you can see your way clear to withhold further shipments until the contractor instructs us to resume. Please acknowledge receipt of this letter, and inform us if this request will be complied with."

Plaintiff answered this letter on the thirtieth day of March and consented to delay further shipments as requested.

On April 4, defendant wrote the plaintiff that the contractor was ready for shipments to be resumed, as he had rented a vacant lot on which to unload the lum-

ber as fast as it reached Chicago, and plaintiff was directed to begin shipping again.

This action was brought by the plaintiff to recover an unpaid balance on the lumber order by the defendant, and defendant's counterclaim with which we have to deal, seeks to recoup for plaintiff's failure to deliver seven hundred and fifty pieces of lumber, which it was compelled to buy elsewhere at a higher price than plaintiff was to furnish them for, in order to fill its contract with Wm. Goldie & Sons Company.

The counterclaim pleaded the contract made in January, and alleged that said contract provided that plaintiff should ship said lumber at once in carload lots of at least twelve thousand feet to a car, and should complete the order on or before the fifteenth day of April, 1899, the lumber to be shipped to Wm. Goldie & Sons Company at Chicago.

Another material allegation of the counterclaim is as follows:

"Defendant states that plaintiff failed to deliver seven hundred and fifty pieces of lumber within the time called for in said contract, to-wit, April 15, 1899, or at any reasonable time thereafter, though repeatedly urged to do so, and that defendant in order to fulfill its contract with said Wm. Goldie & Sons Company, of Chicago, Illinois, was forced to go into the market to buy said lumber elsewhere."

At the trial, plaintiff's account was admitted to be correct by the defendant, and the latter, to sustain its counterclaim, introduced the correspondence above mentioned, and then offered to prove by its manager, Henry R. Asman, the non-delivery by the plaintiff of the seven hundred and fifty pieces of lumber mentioned in the counterclaim and that defendant had to purchase those pieces from another dealer and pay a higher price for them than it was to pay plaintiff; which testimony was excluded, as above stated, because the correspondence introduced by the defendant showed the contract declared on in the counterclaim had been modified by a

subsequent agreement between the parties, and defendant had omitted to plead the modification.

Other letters than those we have mentioned, written at various dates between April 15 and June 10, were introduced, in some of which the defendant urged the plaintiff to make shipments, and one letter from Hartman, dated April 21, responding to a request that shipments of lumber should be pushed, saying that as appellant had previously written it was in no hurry, respondent had acted on that statement.

It is material to notice the reply made to defendant's answer, for nothing is said in it about the modification of the contract in respect to the time in which the lumber was to be delivered, nor was the delay at the request of the defendant, set up as a defense to its counterclaim for damages; but on the other hand, the excuses the reply does offer for plaintiff's failure to deliver, are, first, that pending the shipments, defendant and plaintiff agreed plaintiff need ship no more lumber of certain dimensions, but that other lumber than the kind originally stipulated for should be supplied in place of the latter, and, second, that the seven hundred and fifty pieces were not shipped by the plaintiff, because at the time their shipment was requested, defendant was already indebted to plaintiff for previous shipments, against the terms of the contract, which provided that the lumber should be paid for as soon as the cars were delivered.

It is an undoubted rule of law that a party can not plead one cause of action and recover on another (Chitty v. Railway, 148 Mo. 164), and also a rule that when a party seeks to recover on a contract as subsequently modified, he should plead the original contract with the modification, so as to definitely inform the opposite party of the exact ground on which he seeks to recover. Lanitz v. King, 93 Mo. 513; Harrison v. Railway, 50 Mo. App. (K. C.) 332. But we fail to see that the correspondence which defendant introduced, excluded him from proving the damages laid in his counterclaim, by force of either of the above rules. The

request to hold up shipments temporarily, was made on March 28, and assented to by the plaintiff March 30, on the understanding that they should be resumed when the contractor was ready to receive more lumber, and plaintiff was notified that the contractor was ready on April 4. This was no modification of the contract which would exonerate the plaintiff from his duty to get the lumber to Chicago by April 15, or within a reasonable time thereafter; but simply an arrangement as to an interval in the shipments. In fact, one of plaintiff's letters shows he was holding cars at Brookhaven loaded and ready to be sent when ordered. If plaintiff agreed to delay shipments at the request of the defendant, he agreed also that they should be resumed when the contractor was ready. As he was notified a few days afterwards that the contractor was ready to receive all the lumber he could send and was urged to ship, he was bound to do so; and while the delay of the few days during which he withheld cars, might have excused a proportionate delay in sending them thereafter, it did not excuse him from failing to ship a part of the lumber at all.

In Maack v. Schneider, 51 Mo. App. (St. L.) 92, the same point was considered and decided, the plaintiff therein having sued for an indebtedness due him for services rendered as architect and superintendent under a contract providing that he should draw plans for and supervise the construction of seven houses for the defendant. Plaintiff had been paid for his services in connection with three of the houses, but not for the work on the plans of the four others, and his own testimony proved an agreement between him and the defendant, after three of the houses were built, by which plaintiff was to wait for the balance of his pay until the other houses were built. He waited four years for them to be built and then sued on the theory that he had waited a reasonable time. As this subsequent agreement was not pleaded, the defendant insisted plaintiff should have been nonsuited and in answering that argument, this court said:

"We shall now consider a more serious contention of the defendant. It is that the court should have given his instruction for a nonsuit, because the plaintiff has brought his action and framed his petition upon the contract as originally made, according to his version of it, whereas he seeks to recover upon the contract *as modified* by the settlement of November 3, 1888. In support of this contention the learned counsel for the defendant appeal to the rule that while contracting parties may modify their contracts by a subsequent agreement, yet, if one of them afterwards sues the other upon it, he must declare upon it as modified; he must distinctly set forth in his petition the agreement which produced the change. This principle was laid down in Henning v. Ins. Co., 47 Mo. 425, and in Lanitz v. King, 93 Mo. 513, and it is of course not questioned. But it seems to have no application to the plaintiff's version of the settlement in this case. All that that version, stated most favorably for the defendant, amounts to is that the plaintiff agreed to postpone the payment of a part of the bill which he had rendered, to wait a subsequent event. It seems to be essentially like the common case, where a creditor demands payment of what is due him, gets part of it, and agrees to indulge the debtor a while longer for the balance; in which case he would not, in stating his cause of action, refer to the subsequent agreement of indulgence or extension, unless it might become necessary to do so in order to take his case out of the statute of limitations. We, therefore, do not see that the plaintiff has recovered on a contract different from that stated in the petition; and we accordingly overrule this assignment of error."

If we look at plaintiff's replication, we see at once that the pleadings made no point about this trifling detail in the performance of the contract, but met defendant's counterclaim with other excuses.

We are of the opinion that the evidence offered by the defendant was competent and should have been received, and because it was excluded the judgment must be reversed and the cause remanded to be retried only

as to the second counterclaim without disturbing the findings at the former trial on the other issues. *Bland, P. J.,* and *Barclay, J.,* concur.