WILLIAM A. HUNTER, ALIAS WM. A. HUNT, v. THE STATE.

No. 2833.    Decided June 22, 1904.

**1.—Indictment—Swindling—Necessary Allegations.**

Where an indictment for swindling an insurance company sets out the false and fraudulent representations, acts and pretenses of the insured to the effect that he was dead, but avers that the said company refused to pay the policy thereon, and which therefore could not affirmatively allege that the company believed said false and fraudulent acts, pretenses and representations, or that it relied thereon and voluntarily paid said policy upon the faith therein, or its reliance upon the truth thereof, it was error not to sustain a motion to quash.

**2.—Same—False Representations Must Be Made to Someone.**

Where an indictment for swindling an insurance company fails to allege that the fraudulent acts, pretenses or representations were made to someone to deceive and defraud the said company, and that said company relied thereon and was induced thereby to pay the insurance policy, it is bad on motion to quash.

**3.—Same—Representations Must Deceive.**

Where an indictment for swindling an insurance company showed on its face that said company did not pay the policy on the faith of any representations, acts ,or pretenses made by appellant, or anyone in his behalf, but that it paid it under the compulsion of a judgment of a court of competent jurisdiction, the same, was insufficient and should have been quashed.

**4.—Same—Courts Not Agent.**

A prosecution for swindling can not be predicated on a judgment rendered by a court of competent jurisdiction; and fraudulent acts, pretenses or representations made to the court, by which a judgment is obtained, can not make the court the agent of the party defrauded, or the party defrauding.

**5.—Same—Case Stated.**

Where an indictment alleged that the defendant insured himself for the benefit of his sister and feigned death by drowning; that the insurance company refused to pay the policy upon the claim of the beneficiary and the proof offered of the death of the insured; that thereupon the beneficiary sued and obtained judgment for the amount of the policy and collected the same; that through the false and fraudulent pretenses and representations of defendant the beneficiary was induced to sue and the court to render judgment and thus to defraud the company, and the indictment shows upon its face that the company paid the policy by virtue of said judgment and not voluntarily on the representations and pretenses of defendant, it is insufficient and should have been quashed.

Appeal from the Criminal District Court of Dallas.    Tried below before Hon. E. B. Muse.

Appeal from a conviction of swindling; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Crawford & Crawford,* for appellant.—It is clearly shown by the allegations in the indictment that the money was paid to Mrs. Mettler in satisfaction of a judgment obtained by her against the insurance

company, and that the judgment was rendered upon the verdict of a jury, and was affirmed by the Supreme Court of the United States. It certainly will not be contended that the insurance company every acted upon its belief in the truth of any representation made by the appellant. The court and the jury were certainly independent moral agents, beyond the dictation or control of the appellant or anyone else. It is nowhere alleged that the witness whose testimony supported the case of Mrs. Mettler against the insurance company testified falsely. The jury, under proper instructions from the court, simply drew an erroneous conclusion from the facts to which the witnesses deposed.

The false pretense must be sufficiently proximate to the obtaining of the property to make it indictable, and therefore, if it be too remote, as where a contract intervenes, or where it is not the direct cause of the obtaining, the offense is not committed. 12 Am. and Eng. Enc. of Law, 814, 2 ed., citing Hurst v. State, 39 Texas Crim. Rep., 196. The false pretenses made use of for the purpose must have been believed and relied upon by the defrauded party, and the means of inducing the prosecutor to part with his property. 12 Am. and Eng. Enc. of Law, 819, 2 ed., citing eight cases, beginning with White v. State, 3 Texas Crim. App., 605; ending with Thorpe v. State, 40 Texas Crim. Rep., 346.

In the Thorpe case it is said the things necessary to constitute the offense of swindling are (1) the intent; (2) an actual act of fraud committed; (3) false pretenses, and (4) the fraud must be committed or accomplished by means of the false pretenses made use of for the purpose; that is, must be the cause which induced the owner to part with his property. An essential element of the offense of swindling is that the party injured must have relied upon, believed to be true, and been deceived by the fraudulent representations or devices of the party accused. 40 Texas Crim. Rep., 346; 17 Fla., 215; 89 Am. St. Rep., 17. The same rule is announced in the case of McPearson v. State, decided by this court in March last.

This rule has been so long established and so sturdily maintained, not only in this State but by all the text writers and the courts of every English speaking country, that we feel a delicacy in citing authority to sustain it.

In the court below it was earnestly insisted, because the representations and devices of appellant alleged to be fraudulent consisted of acts, and not verbal declarations, that it was unnecessary to either allege or prove that the company alleged to have been defrauded parted with its money upon the faith of its belief in the truth of the representations thus made. We respectfully submit that such a distinction finds no support either in authority, principle, reason or common sense.

Mr. Bishop says: "One of the most obvious propositions under the present subdivision is, that the person defrauded must have acted on his confidence in the token or symbol, to constitute the complete cheat, in distinction from a mere indictable attempt to cheat. If the false device was used, but the individual operated upon withheld belief in

it, yielding to what was asked from other considerations, there was no cheat by means of the device, only an attempt to cheat. What authorities we have on this point are cases decided under the statutes against false pretenses, to which title the reader is referred for many other points applicable also under the present title.". 2 Bishop Crim. Law, sec. 159, 5 ed. If there is any such distinction between false representations made by acts and conduct, and those made by words, as is sought to be maintained in this case, such distinction escaped the scrutiny of Mr. Bishop.

In civil cases, "Unless the false representations are believed to be true, and are relied and acted upon, it matters not how false and fraudulent the representations may be, they give no cause of action." Security Mort. and T. Co. v. Haney, 27 S. W. Rep., 215. (Texas Civ. App.)

The indictment clearly shows that the insurance company did not rely upon the truth of the representations, acts and conduct of appellant. It is alleged that where the proof of loss was presented by Mrs. Mettler, as required by the terms of the policies, the company refused to pay the claim, and thereupon a suit was instituted by Mrs. Mettler against the company in Dallas County, which was by the defendant removed to the Federal court, where a judgment was rendered upon the verdict of a jury against the company.

The idea conveyed to the mind by the term "reliance" is not only that the defrauded person believe the false representations to be true, but that upon this blief or faith he had acted or was willing to act. Clifford v. State, 56 Ind., 245.

We respectfully submit that no authority can be found, either in the text books or adjudicated cases, where a person has been convicted of swindling unless the defrauded party voluntarily parted with his money or property. If the injured party yields only to overpowering force, there is wanting an essential element necessary to constitute the offense.

It is in substance alleged in the indictment that Mrs. Mettler, J. B. Gibson, H. C. Slack and R. S. Johnson, all incited thereto by appellant, testified upon the trial of the case of Mrs. Mettler against the insurance company, in the Federal court, as to the disappearance of W. A. Hunter, the finding of the camp on the Pecos River, etc., and that by such testimony the court and judge and jury composing the same were induced to believe that W. A. Hunter was dead, and that the jury returned a verdict in favor of the plaintiff; that judgment was entered upon the verdict, a motion for new trial overruled, which judgment was affirmed by the Supreme Court, and the money paid to Mrs. Mettler at the end of the suit.

There is no allegation that the judge, jury or either of the high judicial tribunals mentioned were agents of the insurance company, or had any connection in any manner, shape or form with the company; yet, according to the allegations in the indictment, it was the judge, jury and the courts who were deceived and misled. There is nothing

in the indictment tending to show that the insurance company was deceived or misled.

Where false pretenses are alleged to have been made by a third person through the procurement of the defendant, such allegation can not be supported except by evidence that the defendant instigated such persons to make them. 2 Whart. Crim. Law, 9 ed., sec. 1172; Fraker v. State (Sup. Ct. Mo.), 49 S. W. Rep., 1022.

The word incited or instigate is a synonym of abet, which means in law to aid, promote or encourage the commission of an offense. Certainly the appellant can not be said to have instigated the action of Mrs. Mettler or the other witnesses named in the indictment, by his previous acts in obtaining the policies, nor in any other act alleged to have been done by him. See opinion of Judge Sherwood in the Fraker case, 49 S. W. Rep., 1022, 1023.

It is well settled that if between the acts of the accused and of the consummated offense there is interposed the volition of a free moral agent, then the offense has not been committed by the accused. Fraker's case, supra, and authorities cited.

If we admit that Hunter insured his life for the benefit of his sister, made his camp on the Pecos, left the State, changed his name, and concealed his identity, still none of these acts are unlawful, and the harshest construction which can be placed upon them is that they are instruments of fraud prepared by himself.

It is well settled that the defendant is not criminally responsible for acts of independent third parties in the subsequent use, without privity with him, of instruments of fraud constructed by him. 2 Whart. Crim. Law, 9 ed., sec. 1202; Fraker's case, supra.

*Robert U. Bell,* of the Birmingham bar, also filed a brief for appellant. Commonwealth v. Harkins, 128 Mass., 79; Sims v. State, 28 Texas Crim. App., 447; Epperson v. State, 42 Texas, 79; State v. Anderson, 47 Iowa, 142. See note to Barton v. People, 25 Am. St. Rep., 375. In fact the offense is not complete until there is a receipt of the money by defendant. Conner v. State, 30 Am. St. Rep., 126; Morgan v. State, 48 Am. Rep., 55.

To make false pretense criminal, it must not only relate to a past event or a present existing fact, and not to a promise or something to happen in the future, but the party injured must also believe the pretense to be true, and, confiding in its truth, must by reason of such confidence part with his money or property. State v. Evers, 49 Mo., 542.

It is said in the State v. Dowe, 27 Iowa, 273, 1 Am. Rep., 271, in the third paragraph of the body of the opinion on a demurrer to an indictment, that "It must be a pretense, a representation in fact that is false, and this must be relied upon by the party who it is charged was defrauded. If a pretense and promise blend together and jointly act upon the defrauded person, whereby he is induced to give faith to

the pretense, the case is within the statute.    Citing 2 Bishop's Crim. Law, secs. 348, 352.

*Howard Martin,* Assistant Attorney-General; *Muse & Allen,* and *Maurice E. Looke,* for the State.—False pretenses, within the meaning of the swindling acts, may consist of actions without the accompaniment of words.    Brown v. State, 37 Texas Crim. Rep., 104, 38 S. W. Rep., 1008; Blum v. State, 20 Texas Crim. App., 578; Musgrave v. State, 133 Ind., 297, 32 N. E. Rep., 885.

To constitute the offense of swindling, it is not necessary that the guilty party should acquire, or intend to acquire, the property in question in his own person or for his own benefit.    Musgrave v. State, 133 Ind., 297, 32 N. E. Rep., 885; Commonwealth v. Harley, 7 Metcalf, 462.

To constitute the offense of swindling, it is not necessary that the false representations should be made personally to the one whom it is intended to defraud thereby, or that he personally should be deceived by them or even be cognizant of them.    It is sufficient if the property is acquired by them.    Commonwealth v. Call, 21 Pickering, 515; Commonwealth v. Harley, 7 Metcalf, 462; Roberts v. People, 9 Colo., 458, 13 Pac. Rep., 630.

The false pretense was not too remote from its fruition to be punishable as a swindle.    Regina v. Kenrick, 5 Q. B., 49; Blum v. State, 20 Texas Crim. App., 578; Commonwealth v. Harkins, 128 Mass., 79, dissenting opinion; In re Schurman, 40 Kan., 533, 20 Pac. Rep., 277; Musgrave v. State, 133 Ind., 297, 32 N. E. Rep., 885.

At one time it was questioned whether a false pretense whereby one procured a contract by the enforcement of which in turn he obtained money, was punishable as a swindle.    But it has been settled for many years that the intervention of the contract does not destroy the direct connection between the pretense and the acquisition of the property, and does not render the fraud immune from punishment.    Regina v. Kenrick, 5 Q. B., 49; Blum v. State, 20 Texas Crim. App., 578; Commonwealth v. Harkins, 128 Mass., 79, dissenting opinion; People v. Herrick, 13 Wendell, 87.

HENDERSON, Judge.—Appellant was convicted of swindling, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

The indictment is quite lengthy, and is in several counts.    As the disposition of the case turns on the indictment we state the substantial elements thereof.    The swindle is alleged to have been perpetrated by appellant on the Fidelity Mutual Life Association of Philadelphia, subsequently changed to the Fidelity Mutual Life Insurance Company of Philadelphia, the same being a corporation.    It is charged that appellant about the 7th of November, 1896, insured his life in said Fidelity Mutual Life Association in favor if his sister, Mrs. Jennie M. Mettler, in the sum of $15,000; and that thereafter about the night of the 4th

of December, 1896, he pretended to drown himself in the Pecos River. That on the day before said night, he left Pecos City in a two-horse vehicle, ostensibly to go to Loving County on some business; that he camped on the Pecos River on said night, made his footprints near the water's edge, as if he had slipped into the stream and drowned, and left his wagon at the river with one of his horses tied to a tree (which subsequently starved to death there), and mounting the other horse, rode hurriedly to Barstow Station, some twelve miles distant, disguised himself, took the midnight train, and left the State of Texas, changing his name and secreting himself. He subsequently resided in Alabama, near Birmingham, where he was discovered and arrested some time during the latter part of the year 1902. In the meantime the policies of insurance, which were left at Pecos City, in charge of Senator Gage, a lawyer and banker, were turned over to Mrs. Mettler, appellant's sister and the beneficiary in said policies. Through one Milligan, representing the insurance company, a short time after the disappearance of appellant, she made proof of loss; the company refused to pay the same, claiming appellant was not dead. She subsequently brought suit in the District Court of Dallas County, Texas, which was afterwards removed to the Federal court in said city. The suit came up for trial on May 28, 1900, and after a hearing on evidence, resulted in a judgment in favor of Mrs. Mettler for the amount of said policies, etc. On writ of error to the Supreme Court of the United States, it was affirmed on May 5, 1902; the judgment in all, including the amount of the policies, interest, and damages, amounting to $24,028.25, was paid to the beneficiary Mrs. Mettler, about June 5, 1902. The principal issue in the case was the death of appellant, which was alleged to have occurred by drowning in the Pecos River. This matter was hotly contested, and evidence adduced on the issue pro and con, which ultimately resulted in the judgment as aforesaid. After the payment of the judgment, appellant's whereabouts was discovered, and he was extradited from the State of Alabama, and brought to trial on the charge of swindling as aforesaid. The essential allegations against him in the indictment, as before stated, consisted in his pretended drowning, and the alleged feigned circumstances connected therewith, his clandestine flight from the State of Texas, and his subsequent concealment; that these acts and conduct of his constituted a fraudulent representation to the said Fidelity Mutual Life Insurance Company, though it is not alleged that said company relied thereon or believed the same; but it is charged that by means of said conduct he induced the beneficiary in said policies to bring suit to recover the amount of the same, thus using her as his (appellant's) innocent agent; and thus inducing the prosecution of said suit and the introduction of evidence tending to establish liability of the company, and by these means using the courts and procuring a judgment on said policies, and securing the money on said judgment; and that this, under out statute consummated a swindle, for which appellant was liable criminally.

Appellant moved to quash the indictment upon various grounds, among others, that it was not alleged in said indictment that the Fidelity Mutual Life Association of Philadelphia believed the representations alleged in said indictment which were made in reference to the death of said Wm. A. Hunter, or that the said Fidelity Mutual Life Insurance Company paid the $24,028.25 upon the faith or in reliance upon the truth of any representations made by the said Hunter. Nor was it alleged in the indictment that representations of any character were made by the defendant or anyone else to the Fidelity Mutual Life Insurance Company, or that said money was paid by said company thereon; and that said indictment showed on its face that said company did not pay said money on the faith of any representations made by appellant or anyone on his behalf, but that said money was paid over the protest of said company, and on a judgment recovered against it in the United States Circuit Court for the Northern District of Texas, at Dallas. The court overruled the exceptions, and on the trial summed up the elements of fraud as charged in the indictment, and instructed the jury, if they believed the same, to find appellant guilty of the offense charged. The question thus presented is a new one in this State, though cases somewhat similar in character have occurred in other jurisdictions. Evidently the indictment here presented was drawn under Musgrave v. State, 133 Ind., 297. However, that was a case of conspiracy to defraud an insurance company by concocting circumstances indicating death on the part of the two persons therein named. There was no consummation of the plot, and in that case there was also the alleged use of an innocent agent. That case was brought under the Indiana statute, defining a conspiracy to commit a swindle, and unlike the case at bar there was no judgment. Said case might be good authority on a charge of conspiracy to swindle, not involving the judgment of a court. See articles 953 to 957, inclusive, Penal Code. We are also referred to State v. Fraker, 49 S. W. Rep., 1017. This is a Missouri case, and the indictment follows along the lines pursued here. In that case there appears to have been a consent judgment, which, however, was not collected before the apprehension of Fraker. An examination of that case not only fails to support the State's contention here, but is authority against it. The learned judge who wrote that opinion concluded it with the observation, "That the difficulties with which the pleader had to contend in this instance seem to be insurmountable, no matter how the facts may be stated." The only case which has been brought to our attention which is in point is, Commonwealth v. Harkins, 128 Mass., 79. There it was distinctly held by a majority of the court that a prosecution for swindling could not be predicated on a judgment rendered by a court of competent jurisdiction. While this was by a divided court, the majority opinion seems to be in accord with sound legal principle.

In our State all offenses are statutory. These are required to be defined; and if the definition is not sufficient, the offense fails and there

can be no enforcement. " 'Swindling' is the acquisition of any personal or movable property, money or instrument of writing conveying or securing a valuable right by means of some false or deceitful pretense or device, or fraudulent representation with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the rights of the party justly entitled to the same." Art. 943, Penal Code. In giving effect to this statute, while it has been held that the pretense, or representations, may be of acts or conduct, as well as by words (Blum v. State, 20 Texas Crim. App., 578; Brown v. State, 37 Texas Crim. Rep., 104), still these pretenses must be made to some one, and must be so declared in the indictment. Colbert v. State, 1 Texas Crim. App., 314. And it must be alleged that the pretenses so made were relied upon and the party was induced to part with the ownership of the property on the faith of such representations. These must be shown to be false; and that the party knew they were false when he made them. For authorities see White's Ann. P. C., secs. 1639, subdiv. 4; McPearson v. State, 10 Texas Ct. Rep., 84; Thorp v. State, 40 Texas Crim. Rep., 347. And a connection must be shown between the alleged false representations and the obtention of the property. Hurst v. State, 39 Texas Crim. Rep., 196; 12 Am. and Eng. Enc. of Law, p. 819; Bishop Crim. Law, sec. 159, 5 ed. Applying the doctrine announced by our authorities, and which we believe is almost universally followed, we do not find in the indictment any allegation as to whom the false pretenses (being acts and conduct of appellant) were made, unless it be conceded that by inference they were made to the Fidlity Mutual Life Association. However, if it be assumed that appellant's conduct was equivalent to making representations to said life insurance company, this did not have the desired effect, as the insurance company refused to believe appellant was dead, or to rely thereon. But it is said that the representations were made to the court; that is, appellant caused them to be made, through the innocent agency of Mrs. Mettler, who set the machinery of the court in motion, and his acts were intended for that purpose. So that it follows, if the State has any case against appellant, it must be because he set in motion a fraud which deceived the court. It must be borne in mind here that no fact is disclosed in the record which connects appellant with this case or the prosecution of this claim, save and except his mysterious disappearance at the Pecos River, and the circumstances connected therewith. Therefore, in order to convict appellant, the State is compelled to rely on the circumstances connected with that disappearance. Eliminating the judgment, the case stated would be this. A insures his life in favor of B, and subsequently A disappears under mysterious sircumstances, which suggest he had in view some fraudulent purpose. After this B, the beneficiary, without any connivance on the part of A, believing A is dead, so represents to the insurance company, who, on the faith of such representations, pays the policy. It afterwards transpires that A was

not dead, but had absconded. Now, if it be conceded that A feigned the circumstances of death and absconded in order to enable B to collect the policy, or the circumstances showed this, then a prosecution for swindling might be maintained. But in the absence of any facts or circumstances going to show some connivance on the part of A in the collection of the policy, a conviction could not be upheld. We do not deem it necessary here to discuss the record, or determine whether or not, if the case were presented as above, enough is shown to sustain this conviction. Here we have another factor, or rather two factors: the first, the refusal of the insurance company to believe that appellant was dead; and second, the introduction of another agency to compel the payment of the policy. If it could be determined that the court was the agent of the insurance company serving its interest, then it might follow that fraudulent representations made to it would bind the insurance company. It will be observed there is no consent judgment here, and if the court can be considered as the agent of the insurance company at all, it became so over its protest, and was its involuntary agent, because the company refused to believe in the death of the insured, which is the gravamen of the alleged swindle. If the principle of agency here contended for shall come to be the law, it may as a result deter much litigation, as an honest man with a good cause might hesitate to invoke the action of a court; for although successful, he might find himself imperiled in the toils of a criminal prosecution. The doctrine contended for would in a measure destroy the integrity of judgments in civil cases, when they could thus be attacked by a criminal prosecution. We do not believe the doctrine of agency here contended for accords with sound legal principle. The courts of the country are not to be thus involved in private prosecutions, nor can the integrity of their judgments be jeopardized by characterizing them as a part of the machinery in the consummation of a fraud. The courts of the country are independent agencies of government; and their judgments are presumed to speak the truth; nor will it be permitted that their judgments be assailed as the instruments of fraud, or as an agency in the perpetration of a swindle. In the very nature of things they must stand aloof from any connection with the parties as their agent, save as a function of government, as the final arbiter between all parties, for the determination of the right and the truth as between them. We hold that whenever their power is invoked, between the attempt and the execution of the purpose to swindle, it is the intervention of an independent moral agent, which cuts off any criminal prosecution assumed to be consummated in the judgment. 1 Wharton Crim. Law, secs. 177, 178. Commonwealth v. Harkins, 128 Mass., 79. We quote from that case as follows: "To hold the statute which punishes criminally the obtaining of property by false pretenses extends to the case of a payment made by a judgment debtor in satisfaction of a judgment, when the evidence only shows that the false pretenses were used to obtain a judgment, as one

step towards obtaining the money, would practically make all civil actions for the recovery of damages liable in such cases to revision in the criminal courts, and subject the judgment creditor to a prosecution criminally for collecting a valid judgment, whether the same was paid in money or satisfied by levying on property."

Entertaining these views, we believe the court erred in refusing to quash the indictment. The judgment is accordingly reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*