## J. E. WHITLEY V. THE STATE.

No. 6557.　Decided January 11, 1922.

**1.—Swindling—Bill of Exceptions—Practice on Appeals.**

Where there was no order for extending the time for filing bill of exceptions, and the bill of exceptions was not filed in time, the motion by the State to strike out will be sustained.

**2.—Same—Charge of Court—Requested Charge—Practice on Appeal.**

Where there was nothing on the face of any of the requested charges to apprise this court whether the same were presented before the argument in the case began, and the bills of exception relative thereto had been stricken out, the same cannot be considered on appeal, and there being no exception to the main charge, there was no reversible error.

**3.—Same—Insufficiency of the Evidence—Rule Stated.**

To make out a case of swindling the injured party must be induced to part with his property by false pretenses and representations made for such purpose, and that it was relied on by the injured party, and the pretense must be proved as charged, and where the evidence in the instant case failed to support the rule as here laid down, the conviction cannot be sustained. Following Cowan v. State, 41 Texas Crim. Rep., 617, and other cases.

Appeal from the District Court of Wichita. Tried below before the Honorable P. A. Martin.

Appeal from a conviction of swindling; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Heyser, Hicks, Wilson & Williams* and *H. D. Bishop,* for appellant. On question of insufficiency of the evidence: McDaniel v. State, 140 S. W. Rep., 232, and cases stated in the opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Wichita County of swindling, and his punishment fixed at confinement in the penitentiary for two years.

The State's motion to strike out appellant's bills of exception, because filed too late in the court below, must be sustained. Article 845, Vernon's C. C. P., provides that in the absence of an order extending the time for filing, bills of exception must be filed in the lower court

within thirty days after final judgment, provided the trial term extends more than eight weeks, and within thirty days after adjournment, if the length of the term be otherwise. The term of the trial court in the instant case extended more than eight weeks, but appellant's motion for new trial was not overruled until the day of adjournment, which was July 2, 1921. There was no order extending the time for filing bills of exception, and same appear not to have been filed till August 4th. This was more than thirty days after such adjournment.

Three special charges requested on behalf of appellant, were refused. We cannot consider complaint of the court's action in this regard. There is nothing on the face of any of said charges to apprise us whether same were presented before the argument in the case began, and the bills of exception relative thereto have been stricken out. Jones v. State, 74 Texas Crim. Rep., 205, 167 S. W. Rep., 1110; Lopez v. State, 73 Texas Crim. Rep., 624; Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W. Rep., 316. Either by bill of exceptions or otherwise in the record, it must be made to appear that the requested charges were presented at a proper time. Goldstein v. State, 73 Texas Crim. Rep., 558. There were no exceptions taken to the main charge, and we have held that unless there be such exceptions directed at some omission or error of the main charge, the refusal of requested charges will not be considered on appeal. Speer v. State, 75 Texas Crim. Rep., 348, 171 S. W. Rep., 201.

The only remaining question is the sufficiency of the evidence. This matter has given us much concern. The State only introduced two witnesses—Mary Foley, the alleged injured party—and one Moore, the tax assessor of Hill County. Mr. Moore's testimony related solely to whether or not certain lots in Mt. Calm, Hill County, Texas, existed.

Miss Foley said that she let appellant have $500 in September, 1920. Apparently no note or other evidence of indebtedness or security, was given her at the time of such lending. On October 22, 1920, it appears that appellant was about to leave the town of Wichita Falls, and on that date he executed and delivered to Miss Foley two instruments in writing, one of which is copied in the indictment as being the subject of certain false pretenses made by him to Miss Foley upon which she relied and was induced thereby to part with the $200, the obtaining of which is here charged against appellant as criminal. It is charged in the indictment that appellant pretended to Miss Foley that the instrument set out therein was a valid deed of trust on certain lots and a house in Mt. Calm, Hill County, Texas; and that relying on his representations she delivered to him in exchange for said pretended deed of trust, her $200 in money. The traverse in the indictment states that the property did not in fact exist, and that the pretended deed of trust was not valid because such property did not exist, and "Because said written instrument was not then and there a valid and legal deed of trust."

The written instrument so set out was not a deed of trust and bears no resemblance to such an instrument. It was merely a filled out form for an ordinary vendor's lien note, and recited that J. E. Whitley promised to pay Mary Foley $1,200 thirty days after date, and that this note was given in payment for certain described property in the town site of Mt. Calm, Hill County, Texas, *this day conveyed by me* to Mary Foley; to secure payment of same a vendor's lien is retained *in said conveyance;* and as further security for the payment hereof a deed of trust is this day given to Mary Foley as security on a promissory note. Other recitals usual in such note forms, also appear. At the conclusion of the document and above the signature of appellant appears: "Nov. 15, 1920, $1,200."

The other instrument offered in evidence which was executed by appellant at the same time, and which was also delivered to Miss Foley by him on said date, was a mortgage on a Ford car and a piano, and recites that it is given to secure a note for $1,200 given by J. E. Whitley to Mary Foley, dated October 22d, and due November 15, 1920. If any deed of trust, or any conveyance or other instrument, was executed by appellant, same does not appear in the record.

According to Miss Foley these instruments were delivered to her about or soon after 12 o'clock on October 22d, and neither at the time of such delivery or before then was anything said to her by appellant about any $200 loan, or the obtaining of said sum in any way, and we are forced to conclude that she regarded the transaction of the delivery and acceptance of said papers, as closing up the $500 loan above mentioned. Miss Foley says: "With reference to the time I gave him the check for two hundred dollars, just identified, he gave me those papers that afternoon; about along soon after twelve o'clock. I gave him the checks after that time. Yes, sir, that same afternoon. I don't know how long afterwards; it was about one hour; I do not know. Well, after he came to me and wanted to borrow two hundred dollars more, then I wrote the check out and went down to the bank—it was after he gave me the papers; he told me what they were worth, and after that he told me that he wanted to borrow two hundred dollars. He told me those papers were worth twenty thousand dollars; that they included those lots and a piano." In another part of her testimony she said: "Well, he gave me all of those papers that day before he borrowed the money. I don't know whether he included the papers on the other two hundred, or not. I don't remember. Yes, sir, some money he had borrowed, five hundred dollars. Well, he gave me those papers that day. He didn't come back right there at the house and borrow the two hundred dollars; soon after that. Well, he had not asked for the two hundred dollars when he gave me the notes." She also testified: "No, he had not mentioned the two hundred dollars at the time he executed the papers. He fixed the papers up and told me they were worth twenty thousand dollars, and I received the papers

from him. Yes, sir, and later, right there in the house, he wanted to borrow two hundred dollars more," and further on in her testimony again said: "No, sir, I did not know at the time he was going to want two hundred dollars more. He told me what they were worth. No, he didn't make or renew any representations; he didn't say anything else about it. We went to the bank and cashed the check," and then still further on she repeats: "No, he did not make any further representations as to the value of the property. He had already closed up the papers, told me they were worth twenty thousand dollars, then he—I just made a straight loan, yes, sir, and gave him the check for two hundred dollars after he had fixed up the papers." In concluding her cross-examination this witness also testified: "In borrowing the two hundred dollars nothing was said by him or me that I should rely on the chattel mortgage and note for the two hundred dollars."

To make out a case of swindling the injured party must be induced to part with his property by false pretenses and representations made for such purpose. Blum v. State, 20 Texas Crim. App., 592; Allen 1. State, 16 Texas Crim. App., 150. It must be shown that the false pretense set out in the indictment was not only made, but that it was relied on by the injured party, and was the inducement that moved such person to part with his property. Thorpe v. State, 40 Texas Crim. Rep., 346; Hunter v. State, 46 Texas Crim. Rep., 498; Doxey v. State, 47 Texas Crim. Rep., 505. The false pretense charged must also be proved as laid. Marwilsky v. State, 9 Texas Crim. App., 777; Dechard v. State, 57 S. W. Rep., 814. It has also been held that not only must the injured party have been induced to part with his property by means of the alleged false pretense, but that such pretense must have been such as was reasonably calculated to induce the owner to part with such property. Cowan v. State, 41 Texas Crim. Rep., 617; Peckham v. State, 28 S. W. Rep., 532.

Applying the principles of the above decisions, we observe that all the representations made by appellant were made in closing up the $500 loan, and that the matter of getting the $200 mentioned was not then discussed or referred to. When appellant got said $200 loan later, Miss Foley says over and over that he made no representation, and it is thus made clear that said $200 was not obtained by appellant in exchange for any written instrument, nor did the owner understand that she was receiving any written instrument in exchange for said $200.

We are unable to find any evidence that Miss Foley did not let appellant have the money in question relying as much on the mortgage on the Ford car and the piano as on the supposed deed of trust. She testified that he gave her both of said papers at the same time, and that his representations as to their value included both, and we find no place where he seems to have made any representation as to the separate values of either of said instruments.

The allegation in the indictment that Miss Foley was induced by and relied on representation as to the value of one paper, is not met by proof that appellant gave her two papers, one purporting to be a deed of trust and the other appearing to be a mortgage on a Ford car and a piano. For all we know from the record the mortgage was a genuine mortgage, and the property mentioned therein was of amply sufficient value to have justified a loan of $200 or more, and there appears no evidence or suggestion of the fact that appellant did not then own said Ford car and piano, and that said instrument was not a valid obligation, nor of the fact that Miss Foley did not rely thereon in parting with her money.

We further observe that the testimony of the tax assessor of Hill County was very uncertain as to the existence of the property mentioned in the supposed deed of trust. He testified that no such property appeared in the *original* town site of Mt. Calm, but upon cross-examination admitted that there were several additions and subdivisions of said town site which contained lots and blocks of the number and character described in said instrument. His testimony as to the non-existence of the property was all that appeared in the record. There is also serious doubt in the court's mind as to whether the alleged instrument bears sufficient resemblance to a deed of trust as to justify Miss Foley in accepting and relying upon his representation that it was such instrument. We find ourselves unwilling that a verdict of guilty should stand upon testimony which fails to show that the owner of the alleged property parted with same in exchange for the document which is referred to in the indictment, and in exchange for which it is alleged that she parted with her said money. We cannot assent to a verdict based upon evidence which does not show with some degree of conclusiveness which of the instruments delivered to said property owner, was relied upon by her in parting with the title to her property, nor can we agree with the rather inconclusive opinion of a tax assessor that certain property did not exist in a town in his county, when he admits that there may be additions and subdivisions in said town containing property with that description. All this evidence may be produced by the State upon another trial, and we think should be in order that the guilt of a citizen of this State may be ascertained with sufficient certainty to justify his incarceration in the penitentiary.

For the reasons stated the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*