# THE STATE v. NEWTON MITCHELL, Appellant.

### Division Two, December 16, 1902.

1. **Attempt to Murder: FIRING INTO DWELLING.** One who arms himself with a loaded revolver and goes to the window of the room in which he believes a certain person is sleeping and fires his pistol at the place where he thinks such person is lying, is, under the statute (sec. 2360, R. S. 1899), attempting to commit murder. Nor does the fact that such person is not there, as is believed, make the act any the less an attempt to murder.

2. **Attempt to Commit Crime: PRESENT INABILITY.** It is not necessary that there be present ability to commit the offense in order to constitute an attempt to commit the same. The attempt is complete and punishable when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption or of some other fact unknown to the perpetrator at the time he made the attempt to carry out the criminal intent.

3. **Attempt to Murder: PUNISHMENT: INSTRUCTION.** Where the offense attempted to be committed is murder in the first degree, it is not error to instruct the jury that if they find beyond a reasonable doubt that the defendant feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, with a deadly weapon, a pistol, made an attempt to kill and murder a certain named person, then they will assess his punishment at not less than two nor more than fifteen years in the penitentiary.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*John A. Cross & Sons* for appellant.

(1) The information fails to show or allege that an assault was made on Warren, or that he was assaulted with anything. It fails to allege that Warren was in the house at any time, before or at the time the shot was fired. An intendment can not supply the deficiency, for in criminal prosecutions everything constituting the offense must be set forth with certainty

and clearness. State v. Rector, 126 Mo. 328; State v. Evans, 128 Mo. 406; State v. Dougherty, 30 Tex. 360. (2) The trial court erred in its instruction to the jury as to the amount of punishment to be assessed. If the information in this case charges in any offense under the law, it is an assault with intent to kill, under section 1847 or section 1848, Revised Statutes 1899. These sections provide a punishment for assault with intent to kill. The court should have instructed the jury in accordance with the provisions of those sections. R. S. 1899, sec. 2370; State v. Burke, 89 Mo. 635; State v. Scholoss, 93 Mo. 361; State v. Frank, 103 Mo. 120; State v. Buchler, 103 Mo. 203. The information and the evidence entitled defendant to an instruction giving the jury the option to fix the punishment at imprisonment in the county jail, or by fine, etc., and the failure of the court to give such instruction was error. R. S. 1899, sec. 2627.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) There can be no question as to defendant's guilt. There was ample evidence upon which to find a verdict of guilty; in which event the judgment of the jury will not be disturbed, unless the record or proceedings be found irregular. (2) Defendant undertakes to make the point that the first count in the information (upon which conviction was obtained) is defective. It is asserted that it fails: First, to allege that an assault was made on Warren or that he was assaulted with anything; second, to allege that Warren was in the house at any time before or at the time the shot was fired. As to the first proposition, we call the court's attention to section 2360, Revised Statutes 1899. Under this section it was not necessary to allege an assault. The language of the statute was followed as near as may be and more was unnecessary. Kelley's Crim. Law, sec. 1092; State v. Anderson, 81 Mo. 78; State v. Terry, 109 Mo. 601. An indictment is suffi-

cient, though it does not follow the language of the statute, if it uses substantially the words of the statute, or words of equivalent meaning. State v. Little, 67 Mo. 624; State v. Meinhart, 73 Mo. 63. The information is sufficient if it sets out all the elements, incidents and conditions precedent of the statute. State v. Madden, 81 Mo. 421; State v. Brown, 115 Mo. 409.

GANTT, J.—Defendant was tried upon an information filed by the prosecuting attorney of Clinton county at the May term, 1901, and convicted of an attempt to murder John O. Warren. His punishment was assessed at five years in the penitentiary. The information is in the following words:

"State of Missouri, County of Clinton, ss.

"In the Circuit Court of Clinton County, Missouri, May term, 1901.

"State of Missouri,
        vs.
"Newton Mitchell.

"Thomas W. Walker, prosecuting attorney within and for the county of Clinton in the State of Missouri, upon his oath informs the court, that Newton Mitchell, late of the county of Clinton in the State of Missouri, on the 16th day of March, A. D. 1901, at the said county of Clinton, State aforesaid, then and there feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought did make an attempt to kill and murder one John O. Warren then and there being, and in said attempt and towards the commission of said offense and felony he, the said Newton Mitchell, then and there feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought with a pistol, commonly called a revolver, being a dangerous and deadly weapon, loaded with gunpowder and leaden balls, which he, the said Newton Mitchell, then and there had and held, did shoot at and through

a window of a dwelling house and into said dwelling house, then and there occupied by the said John O. Warren, as a residence and place of habitation, with the belief and calculation, then and there had, that the said John O. Warren, was then and there within said dwelling house and at the place therein towards which the said Newton Mitchell discharged and shot the said pistol, with the intent then and there, him, the said John O. Warren, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought to kill and murder, but the said Newton Mitchell did then and there fail in the perpetration of said offense, but through no fault of his. And the said Thomas W. Walker, prosecuting attorney, as aforesaid, upon his oath aforesaid, further informs the court that one Charles Wilhoit, late of the county of Clinton, State aforesaid, before the said offense and felony was committed in the manner and by the means aforesaid, was then and there feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, present, aiding and abetting, advising and counseling the said Newton Mitchell, the offense and felony aforesaid to do and commit, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

A second count in the information charged the defendant with an assault with intent to kill, but as the jury acquitted him on that count it is not necessary to incumber this opinion with it.

On the 16th day of March, 1901, John O. Warren and his wife were living in the town or village of Trimble in Clinton county of this State. Sometime previous to the difficulty the defendant had boarded with Warren, the prosecuting witness. They had known each other for twenty years or more. On the night of the 16th of March, Mrs. Warren had attended church and on her return home, she and her husband were standing in the lower room of their house when they heard a noise indicating that some one outside was prowling around the house. Warren took a lan-

tern and started out, and as he came around the house saw two men walking off. He followed and they quickened their pace. He followed them quite a distance and then returned home. The taller of the two men had on a black overcoat and a black hat, and the smaller of the two wore a light overcoat and a black hat. From his long acquaintance with these men, their manner of walking and general appearance, Warren took them to be Newton Mitchell, the defendant, and Charles Wilhoit. After Warren returned from following these men, he went up stairs where his wife and children had gone to bed. The defendant having boarded in the house, knew how it was arranged. A bed stood in one corner of the downstairs room, and a dresser not far from it. After Warren had retired, perhaps an hour, a pistol was fired immediately at his house, and in five or ten minutes a second discharge of the pistol occurred. Examination was made of the result of these shots and it was found that two shots had gone through the window. The bullet from one went into the pillow in the lower room, and the other hit the corner of the dresser. The window sash and pillow with the balls found were exhibited, identified and offered in evidence.

The evidence further disclosed that when Mrs. Warren came out of church that night with her little daughter, the defendant came up and imposed his presence on her, and she pushed her daughter between him and her. He followed her a part of the way to her home, to within one hundred yards of her house, and then desisted. The daughter corroborated her mother's evidence.

Another witness, Whitmore, saw defendant that night going in the direction of Warren's house, in company with another man, taller than he was, who was wearing a black overcoat and a black hat. He saw them approach within twenty-five feet of Warren's house. Mitchell the defendant wore a light-colored overcoat. He heard a shot fired about ten minutes after he had returned to the Trimble Mercantile store.

It further transpired that the defendant told Mrs. Warren he wouldn't live with her husband if he was in her place, and Warren forbade his coming to his house; that she could do better than live with Warren, and asked her, "Why couldn't we marry if the old man was out of the way?"

Another witness, Miles, testified to seeing defendant going in the direction of Warren's house that night. He wore a light-colored overcoat. A. K. Smith testified that defendant showed him a pistol in his drugstore that night. He said somebody had been chasing him with a lantern and got within ten feet of him two or three times. Inquired if witness kept cartridges. The pistol looked like a 32-calibre. This was after church. Edwards, another witness, testified that defendant pulled out a pistol and exhibited it, about nine o'clock. Walter Vaughan saw the flash of a pistol and heard a shot right close to Warren's window, and twenty minutes later heard another shot. Lee Cox saw the holes in the window, and the pillow, that night. Was attracted by the crowd that went down to Warren's house that night.

Jack Humphrey detailed a statement made to him on Monday after the shooting Saturday night in which defendant told him if anybody asked about him to say he had not seen him. This was in the neighborhood of Paradise. Witness inquired what was the matter, and defendant answered, "A little d—d foolishness."

There was evidence tending to prove that defendant failed to appear on the day his case was set before the justice and was seen walking rapidly across the country in Clay county. William Duncan testified that defendant said to him, after he had warned him about Warren's wife, that "If she would leave John Warren he would furnish her all the money she wanted to live on."

Another witness heard the defendant say, "If John Warren ever crosses my path I will fill him so full of bullet holes he will not know what he was made of," and said to this same witness, "If Warren's wife

wanted the money to leave him he [defendant] would take care of her the rest of her days,'' and ''If he couldn't separate them one way he intended to do it another.''

Defendant and Wilhoit both testified they were not near Warren's house that night. Wilhoit, however, admitted he and defendant and a man named Wiley came to Trimble that night in a buggy and were at the church; couldn't remember whether he had on an overcoat that night or not. And that Mitchell did wear a light-colored overcoat. Defendant and Wilhoit both offered evidence of a good character for morality.

I. The first insistence is that the first count in the information is so defective that it will not sustain the sentence. Whether the objection is well taken or not, depends upon what constitutes the offense and what is esesntial to be proven. The statute provides that ''every person who shall attempt to commit an offense prohibited by law, and in such an attempt shall do any act towards the commission of such offense, but shall fail in the perpetration thereof, or be intercepted or prevented from executing the same,'' etc., shall be punished as therein provided. [R. S. 1899, sec. 2360.] Murder is an offense prohibited. When the defendant armed himself with a loaded revolver and went to the window of the room in which he believed John O. Warren was sleeping, from his knowledge acquired by visiting his family, and fired his pistol at the place where he thought Warren was lying, he was attempting to assassinate and murder him. The fact that Warren was not there as he believed him to be, did not make it any the less an attempt to murder. Our statute on this subject is substantially like that of Massachusetts, construed in Com. v. McDonald, 5 Cush. 365, and Com. v. Sherman, 105 Mass. 169, in which it was held ''that neither allegation nor proof was necessary, that there was any property, capable of being stolen, in the pocket or upon the person of the one against whom the attempt to commit larceny was made.''

And the same conclusion was reached in Com. v. Bonner, 97 Mass. 587, in which the objection was distinctly made that it was equivocal and insufficient in its description of the overt act. "A man may make an attempt, an effort, to steal by breaking open a trunk, and be disappointed in not finding the object of pursuit, and so not steal in fact. So a man may make an attempt, an experiment, to pick a pocket by thrusting his hand into it, and not succeed, because there happens to be nothing in the pocket. Still he has clearly made the attempt, and done the act towards the commission of the offense." The court concludes: "It not being necessary to allege that there was anything in the pocket of the unknown person, and as all that part of the indictment may be stricken out, the ruling of the court, that there need be no evidence of any property in the pocket of the person, was correct, and is fully supported by authority (Roscoe, Crim. Ev., 100)." [Com. v. McDonald, supra.]

And a similar ruling was made in State v. Wilson, 30 Conn. 500, in which it was said, "The attempt to steal from the person by thrusting the hand into the pocket is complete although there may have been nothing in the pocket." In this last case it was urged that there must be present ability to perpetrate the offense; that if in this case the pocket was empty, there could be no such ability, but the court answered, "But it is not true that the thing intended to be taken must be where the thief supposes it to be, or that there must be in fact property where he supposes there is. It is sufficient if he supposes there is property in the pocket, trunk, or other receptacle, and attempts by some act adapted to the purpose, to obtain it feloniously." "The only safe rule is that the attempt is complete and punishable when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause, or because there was nothing in the pocket." See also Regina v. Brown (1889), 24 Q. B. D. 357.

Of course if it were alleged that certain goods were in the pocket it would be necessary to prove it as averred. In Com. v. Jacobs, 91 Mass. 274, Mr. Justice Gray, speaking for the court said, "Whenever the law makes one step towards the accomplishment of an un-lawful object, with the intent or purpose of accomplish-ing it, criminal, a person taking that step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, can not pro-tect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance." [Kunkle v. State, 32 Ind. 220; 1 Bishop's New Crim. Law, secs. 751, 752-3.]

So in this case the intent evidenced by the firing into the bedroom with a deadly weapon accompanied by a present capacity in defendant to murder Warren if he were in the room, and the failure to do so only because Warren haply retired upstairs instead of in the bed into which defendant fired, made out a perfect case of an attempt within the meaning of the statute, and the information is sufficient. The evidence conclusively supported the information. It discloses a deliberate and dastardly attempt at assassination, which was only averted by the intended victim's going upstairs to bed that night.

II. Was the instruction as to punishment erron-eous? The offense attempted to be committed was murder in the first degree, and the indictment so charged. By section 2360, Revised Statutes 1899, it is provided that "if the offense attempted to be committed be such as is punishable by the death of the offender, the person convicted of such attempt shall be punished by imprisonment in the penitentiary for a term of not less than two nor exceeding fifteen years." The court instructed the jury that if they found beyond a reasonable doubt that the defendant feloniously, will-fully, deliberately, premeditatedly, on purpose and of

Vol 170 mo—41.

his malice aforethought, with a deadly weapon, a pistol, made an attempt to kill and murder John O. Warren, then they would assess his punishment at not less than two nor more than fifteen years in the penitentiary. The court correctly instructed as to the punishment. The attempted offense was, under the evidence, nothing less than murder in the first degree.

We find no error in the record, and affirm the judgment. All concur.